1  Zhener Low (State Bar No. 355279)
   zhener@moni.law
2  **Morrow Ni LLP**
   3333 Michelson Drive Suite 300
3  Irvine, CA 92612
   Telephone: (213) 282-8166
4
   *Attorneys for Petitioner*
5  *Shanghai Tyron Semiconductor Equipment Co., Ltd.*

6            IN THE UNITED STATES DISTRICT COURT

7          FOR THE NORTHERN DISTRICT OF CALIFORNIA

8            **C  24  08551  NC**

9  SHANGHAI TYRON SEMICONDUCTOR        Case No.
   EQUIPMENT CO., LTD., a Chinese
10 Corporation                          **DECLARATION OF ZHENER LOW IN
                                         SUPPORT OF ADMINISTRATIVE
11              Petitioner,              MOTION TO FILE THIS CASE UNDER
                                         SEAL**
12        v.

13 Capital Asset Exchange and Trading, LLC, a
   California Limited Liability Company,
14
15              Respondent.
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. To be assigned                              Low Sealing Decl

**FILED**

**NOV 27 2024**

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

**DECLARATION OF ZHENER LOW IN SUPPORT OF ADMINISTRATIVE MOTION**

**TO FILE THIS CASE UNDER SEAL**

I, ZHENER LOW, declare as follows:

1.    I am over the age of 18 and have personal knowledge, information and belief of the matters that I am declaring here.

2.    I am counsel for Petitioner in the above-captioned action.

3.    A true and correct copy of a draft of Petitioner's Petition to Confirm and Enforce Foreign Arbitral Award is attached hereto as **Exhibit A**.

4.    A true and correct copy of a draft of Petitioner's Memorandum of Points and Authorities in support of Petition to Confirm and Enforce Foreign Arbitral Award is attached hereto as **Exhibit B**.

5.    A true and correct copy of a draft of Declaration of Zhener Low in support of Petition to Confirm and Enforce Foreign Arbitral Award is attached hereto as **Exhibit C**, along with all its exhibits cited therein.

6.    A true and correct copy of a draft of Proposed Order for the Petition to Confirm and Enforce Foreign Arbitral Award is attached hereto as **Exhibit D**.

7.    A true and correct copy of a draft of Civil Cover Sheet for the Petition to Confirm and Enforce Foreign Arbitral Award is attached hereto as **Exhibit E**.

8.    A true and correct copy of a draft of Request for Issuance of a Summons in a Civil Action for the Petition to Confirm and Enforce Foreign Arbitral Award is attached hereto as **Exhibit F**.

9.    A true and correct copy of a draft of Corporate Disclosure Statement and Certification of Interested Entities or Persons for the Petition to Confirm and Enforce Foreign Arbitral Award is attached hereto as **Exhibit G**.

Case No. To be assigned                    1                    Low Sealing Decl

10.     A true and correct copy of a draft of Notice of Appearance of Zhener Low is attached hereto as **Exhibit H**.

11.     A true and correct copy of a draft of Petitioner's Notice of *Ex Parte* Motion for Temporary Restraining Order and Memorandum of Points and Authorities in Support of the *Ex Parte* Motion for Temporary Restraining Order is attached hereto as **Exhibit I**.

12.     A true and correct copy of a draft of Declaration of Zhener Low in Support of *Ex Parte* Motion for Temporary Restraining Order is attached hereto as **Exhibit J**.

13.     A true and correct copy of a draft of Proposed Temporary Restraining Order is attached hereto as **Exhibit K**.

14.     Exhibits A to K are the case-initiating documents that Petitioner is seeking to file under seal through the Administrative Motion to File This Case Under Seal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Executed on November 26, 2024 at San Carlos, California.

By: _____

Zhener Low

# Exhibit A

## [Entire Exhibit Proposed to be Filed Under Seal]

Zhener Low (State Bar No. 355279)
zhener@moni.law
**Morrow Ni LLP**
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166

*Attorneys for Petitioner*
*Shanghai Tyron Semiconductor Equipment Co., Ltd.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANGHAI TYRON SEMICONDUCTOR EQUIPMENT CO., LTD., a Chinese Corporation | Case No. |
|             Petitioner,<br><br>   v. | **PETITION TO CONFIRM AND ENFORCE FOREIGN ARBITRAL AWARD** |
| Capital Asset Exchange and Trading, LLC, a California Limited Liability Company,<br><br><br>            Respondent. | |

Petitioner Shanghai Tyron Semiconductor Equipment Co., Ltd. ("Tyron" or "Petitioner"), by and through its undersigned counsel, respectfully submits this petition ("Petition") to confirm an Emergency Arbitrator Decision ("Award") dated October 24, 2024 rendered in a China International Economic and Trade Arbitration Commission ("CIETAC") arbitration between Petitioner and Respondent Capital Asset Exchange and Trading, LLC ("Respondent"), case no. (2024) CIETAC SH No. 018823. This Petition is supported by an accompanying memorandum of points and authorities, Declaration of Zhener Low, and all other accompanying documents. In support of this Petition, Petitioner respectfully alleges as follows:

## **INTRODUCTION**

1.       Petitioner brings this arbitration award confirmation proceeding pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 *et seq*, which implements the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").

2.       The arbitration was conducted under the China International Economic and Trade Arbitration Commission (CIETAC) Emergency Arbitrator Procedures, Appendix III to the China International Economic and Trade Arbitration Commission (CIETAC) Arbitration Rules (Effective as of January 1, 2024) ("the Arbitration Rules"). The seat of the arbitration was Shanghai. The parties to the arbitration are the same as the parties here.

3.       On October 24, 2024, an Emergency Arbitrator duly appointed under the CIETAC Rules issued an Emergency Arbitrator Decision in favor of Petitioner, and provided it to all parties. Ex. C-1 (Emergency Arbitrator Award) and Ex. C-2 (Transmittal E-mail and Award to all parties) to Zhener Low Declaration in Support of Petition To Confirm And Enforce Foreign Arbitral Award ("Low Petition Decl"). The Award restrained Respondent from directly or indirectly, by any means whatsoever, selling, removing, dissipating, alienating, transferring,

assigning, changing ownership, encumbering, or other similarly dealing with assets up to $5,366,500 USD. Ex. C-1 at 18-19.

4.      Under § 207 of the FAA, this Court "shall confirm" the Emergency Arbitrator Decision unless it finds one of the grounds for refusal or deferral of confirmation specified in the Convention. Here, the Award is final and enforceable under the FAA and the Convention. As there are no grounds to refuse or defer recognition of the Award, the Award should be confirmed.

## PARTIES

5.      Petitioner is a corporation organized under the laws of the People's Republic of China, with its registered office at No. 101, 1 Floor, Building E, No. 210 Xuanqiu Road, Xuanqiao Town, Pudong New District, Shanghai, PRC.

6.      Respondent Capital Asset Exchange and Trading, LLC ("Capital Asset") is a California Limited Liability Company. Its registered principal address is 5201 Great America Parkway Suite 320, Santa Clara, CA 95054.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this Petition pursuant to 9 U.S.C. §203 as an action "falling under the [New York] Convention" because the Petition seeks confirmation of an arbitration award arising out of a commercial legal relationship not "entirely between citizens of the United States." See 9 U.S.C. § 202.

8.      This Court has personal jurisdiction over Respondent because the Respondent is a California company.

9.      Venue is proper in this District because Respondent is incorporated and located in this District in California.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

### I.    The Dispute

10.    On August 12, 2022, the Petitioner and the Respondent entered into a contract (No. TYEP2022081101), under which the Petitioner agreed to purchase from Respondent one second-hand lithography machine (specification: NIKON NSR- 2205112D) for a total contract price of $2,250,000 USD (hereinafter referred to as Contract I). Ex. C-3 at 1. The contract terms specified Exworks, with a delivery date before September 1, 2022, and a place of delivery in Germany. *Id.* at 1-2. Article 12 of Contract I further stipulated that: "If the seller delays the delivery, with exception of Force Majored [sic] clauses specified in Clause 9 of this Contract, the Seller shall pay 3% of the contract amount to the Buyer as liquidated damages for each week overdue (less than one week shall be calculated as one week). If the overdue period exceeds 21 days, the Seller shall pay 15% of the contract amount to the Buyer. And the Buyer has the right to terminate the contract, and the Seller shall also bear the relevant losses." *Id.* at 2.

11.    On August 22, 2022, the Petitioner and the Respondent entered into another contract (No. TYEP2022082201), under which the Petitioner agreed to purchase from the Respondent one second-hand lithography machine (specification: NIKON NSR- 2205112D) for a total contract price of $2,360,000 USD (hereinafter referred to as Contract II and, together with Contract I, the "Purchase Contracts"). *Id.* at 4. The contract terms specified Exworks, with a delivery date before December 31, 2022, and with a place of delivery in Europe. *Id.* at 4-5. Article 12 of Contract II is identical to the Article 12 of Contract I. *Id.* at 5.

12.    Article 13 of both Purchase Contracts contain a CIETAC arbitration clause, stipulating that: "Law application: All disputes in connection with this Contract or the execution thereof shall be settled through friendly negotiations. In case no settlement can be reached through negotiations, the case should then be submitted for China International Economic and Trade

Arbitration Commission Shanghai Branch arbitration. The arbitration fee shall be borne by the losing party." *Id.* at 3 and 6.

13.     As of September 26, 2022, the Petitioner had paid in full the total price of $ 4,610,000 USD under the Purchase Contracts. Ex. C-1 at 11.

14.     On October 22, 2022, the Petitioner and the Respondent further signed Purchase Orders (Nos. 25239 and 25268) for the purpose of deinstallation, bracket installation, rigging, crating and logistics for tools in Contract I and deinstallation, bracket installation, rigging, crating and logistics for tools in Contract II. Each purchase order was priced at US$32,500 each. *Id.* at 11-12. Accordingly, the Petitioner paid $32,500 to the Respondent on November 4, 2022 and paid another $32,500 USD to the Respondent on November 7, 2022. *Id.* at 12.

15.     Subsequently, the Respondent failed to deliver the goods within the delivery period agreed in the Purchase Contracts. *Id.*

16.     From 2023, the Petitioner repeatedly urged the Respondent to deliver the goods by email, expressed its serious concern about the Respondent's delay in delivery, and repeatedly requested the Respondent to provide the latest progress of the deliveries and the expected delivery time. *Id.* When the delivery still remained outstanding, Petitioner attempted to seek a refund but Respondent indicated that it will communicate with its legal counsel and never got back to Petitioner. *Id.*

17.     The Respondent has still not delivered the goods and services to the Petitioner to date. Neither has it provided a refund or corresponded to any email communications since May 13, 2024. *Id.*

## II.   The Arbitration

18.     On August 30, 2024, the Petitioner submitted its Application for Emergency Arbitration Procedures and its appendices to CIETAC. *Id.* at 4.

19.     On September 5, 2024, the Petitioner submitted a written request for arbitration to CIETAC. *Id.*

20.     An Emergency Arbitrator, Mr. Wei Sun,[1] was appointed on October 9, 2024. *Id.* On the same date, the CIETAC simultaneously sent to the Petitioner and the Respondent, by e-mail and express mail service, respectively, the Notice of Arbitration, the Notice of Acceptance of Application for Emergency Arbitrator Procedures, the Declaration of Acceptance signed by the Emergency Arbitrator, the Arbitration Rules, and the Arbitration Commission's Panel of Arbitrators (the foregoing documents are in both Chinese and English); at the same time, CIETAC also sent Respondent Petitioner's Application for Arbitration and its appendices, and Application for Emergency Arbitration Procedures and its appendices were also sent to the Respondent. *Id.*

21.     The arbitrator specifically noted in his award that these documents had been successfully delivered to Respondent. *Id.* at 4-5. The e-mail addresses used for such service and notice were the same ones at which Petitioner had successfully corresponded with Respondent as recently as May 2024, and the mail addresses were known business addresses according to what Respondent had provided on its website and on the contracts at issue. *Id.*; Ex. C-4 (an e-mail chain

------

[1] Arbitrator Sun is an equity partner at the well-known Chinese law firm Zhong Lun Law Firm. According to his firm profile, he has extensive experience in arbitration and is a member of both the New York Bar and the Chinese Bar. His firm profile and list of credentials may be found at the following link: https://en.zhonglun.com/team/sunwei.html

containing a May 13, 2024 E-mail from Austin Gill [agill@caeonline.com] of Respondent to Petitioner that copies a series of other caeonline.com domain e-mail addresses).

22.    On October 10, 2024, the arbitrator emailed to both parties the Arrangements of the Emergency Arbitrator Procedure (the Arrangements) (in both Chinese and English), which essentially describe the emergency arbitrator's procedures. Ex. C-1 at 5.

23.    On October 20, 2024, the virtual hearing was held as scheduled. The Petitioner's legal representative and appointed agent were present, but the Respondent failed to attend, without giving any reason. *Id.* Nor did the Respondent make any submissions. *Id.* at 10.

24.    On October 24, 2024, the Petitioner obtained and filed confirmation of liability insurance for preservation of property in connection with its application for emergency relief. *Id.* at 6.

25.    All documents of this case under the Emergency Arbitrator Procedures were effectively served on the parties in accordance with Article 8 of the Arbitration Rules. *Id.*

## III.    The Award

26.    Based on the above facts and reasons, the arbitrator issued the following award:

(I) The Respondent is restrained from directly or indirectly, by any means whatsoever, selling, removing, dissipating, alienating, transferring, assigning, changing ownership, encumbering, or other similarly dealing with assets of the Respondent. The total amount of such assets shall not exceed the amount of damages, i.e. $5,366,500 USD. Such assets shall be in the form of, but not limited to:

(1) Assets owned, controlled, possessed, held for the benefit of, accessible to, or belonging to Respondent, in whole or in part;

(2) Assets in the Respondent's actual or constructive possession;

(3) Assets in the actual or constructive possession of, directly or indirectly, or owned, controlled, held by, accessible to, or belonging to, another corporation, partnership, trust, or any other entity, including, but not limited to, those in an account at any bank or savings and loan institution, or held by any credit card processing agent, customer service agent, commercial mail receiving agent, or mail depository/forwarding company, credit cooperative, retirement fund custodian, monetary market or mutual fund, savings company, trustee, broker dealer, escrow agent, title company, commodity trading company, precious metals dealer, or financial institution or depository institution of any kind or held for the benefit of the Respondent.

(II) The cost of this Emergency Arbitrator Procedure was RMB 30,000, which shall be borne by the Respondent. The foregoing cost has been fully prepaid by the Petitioner, and the Respondent shall pay RMB 30,000 to the Petitioner to compensate the Petitioner for the procedural cost advanced by the Petitioner.

*Id.* at 18-19.

27.    The arbitrator further stated, for the avoidance of doubt, that his decision was binding upon both parties and would take effect from the date of the decision. *Id.* at 19.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1. Issue an order confirming CIETAC's October 24, 2024 Award;

2. Enter judgment in favor of Petitioner and against Respondent for all the costs and fees incurred by Petitioner in relation to the arbitration, in the enforcement of the Award, and in any post-judgment enforcement proceedings; and

3. Award Petitioner such further and other relief that this Court deems just and proper.

Respectfully Submitted,

DATED: November 26, 2024

**MORROW NI LLP**

By:

Zhener Low
zhener@moni.law
Morrow Ni LLP
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166

*Attorneys for Petitioner*

# Exhibit B

[Entire Exhibit Proposed to be Filed Under Seal]

1  Zhener Low (State Bar No. 355279)
   zhener@moni.law
2  **Morrow Ni LLP**
   3333 Michelson Drive Suite 300
3  Irvine, CA 92612
   Telephone: (213) 282-8166

4  *Attorneys for Petitioner*
5  *Shanghai Tyron Semiconductor Equipment Co., Ltd.*

6               **IN THE UNITED STATES DISTRICT COURT**

7            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

8

9  SHANGHAI TYRON SEMICONDUCTOR         Case No.
   EQUIPMENT CO., LTD., a Chinese
10 Corporation                         **PETITIONER'S MEMORANDUM OF**
                                        **POINTS AND AUTHORITIES IN**
11              Petitioner,             **SUPPORT OF PETITION TO CONFIRM**
                                        **AND ENFORCE FOREIGN ARBITRAL**
12      v.                              **AWARD**

13 Capital Asset Exchange and Trading, LLC, a
   California Limited Liability Company,
14

15              Respondent.

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. To be assigned                          Memorandum of Points and Authorities

## TABLE OF CONTENTS

Page No.

**INTRODUCTION** ................................................................................................. 1

**PARTIES** ............................................................................................................... 2

**BACKGROUND** ................................................................................................... 2

    I.   THE DISPUTE. ........................................................................................... 2

    II.  THE ARBITRATION ................................................................................ 3

    III. THE AWARD ............................................................................................ 5

**ARGUMENT** ......................................................................................................... 6

    I.   THE COURT HAS JURISDICTION AND VENUE IS PROPER. ................... 6

    II.  THE AWARD SHOULD BE CONFIRMED. .............................................. 7

         A.   APPLICABLE LEGAL STANDARD. ................................................... 7

         B.   NO GROUNDS FOR REFUSAL OF ENFORCEMENT APPLY. ................ 8

             *1. Interim Awards For Preliminary Equitable Relief Are Subject To Confirmation Under The FAA.* ................................................................................... 9

             *2. No Other Grounds Exist For Refusal To Confirm.* .......................... 10

**CONCLUSION** ..................................................................................................... 11

## TABLE OF AUTHORITIES

Page(s)

Cases

*Anhui Provincial Import and Export Corp. v. Hart Enterprises International, Inc.,*
  1996 WL 229872 (S.D.N.Y. 1996) ...................................................................................10

*Castro v. Tri Marine Fish Co. LLC,*
  921 F.3d 766 (9th Cir. 2019) .......................................................................................7, 8

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.,*
  264 F. Supp. 2d 926 (N.D. Cal. 2003) .........................................................................5, 9

*In re Drexel Burnham Lambert Group, Inc.,*
  995 F.2d 1138 (2d Cir. 1993) .........................................................................................10

*Empresa De Telecommunicaciones De Bogota S.A. E.S.P. v. Mercury Telco Grp., Inc.,*
  670 F. Supp. 2d 1357 (S.D. Fla. 2009) ..........................................................................11

*Guarino v. Productos Roche S.A.,*
  839 F. App'x 334 (11th Cir. 2020) .................................................................................10

*Island Creek Coal Sales Co. v. City of Gainesville,*
  729 F.2d 1046 (6th Cir. 1984) ..........................................................................................9

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,*
  364 F.3d 274 (5th Cir. 2004) ..........................................................................................10

*Kondot S.A. v. Duron LLC,*
  586 F. Supp. 3d 246 (S.D.N.Y. 2022) ............................................................................10

*Mesa Valderrama v. United States,*
  417 F.3d 1189 (11th Cir. 2005) ......................................................................................10

*Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.,*
  665 F.3d 1091 (9th Cir. 2011) ..........................................................................................8

*Mullane v. Central Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950) .........................................................................................................10

*Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.,*
  935 F.2d 1019 (9th Cir. 1991) ..........................................................................................9

*S. Seas Navigation Ltd. v. Petroleos Mexicanos,*
  606 F. Supp. 692 (S.D.N.Y. 1985) ...................................................................................9

*Yahoo! Inc. v. Microsoft Corp.*,
    983 F. Supp. 2d 310 (S.D.N.Y. 2013) ............................................................................9

**Statutes**

9 U.S.C. § 201 ............................................................................................................................7

9 U.S.C. § 202 .......................................................................................................................6, 7

9 U.S.C. § 203 ............................................................................................................................6

28 U.S.C. § 1391 ........................................................................................................................7

**INTRODUCTION**

Petitioner Shanghai Tyron Semiconductor Equipment Co., Ltd. ("Tyron" or "Petitioner"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its petition ("Petition") to confirm an Emergency Arbitrator Decision dated October 24, 2024 rendered in a China International Economic and Trade Arbitration Commission ("CIETAC") arbitration between Petitioner and Respondent Capital Asset Exchange and Trading, LLC ("CAET" or "Respondent"), case no. (2024) CIETAC SH No. 018823.

Petitioner brings this arbitration award confirmation proceeding pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 *et seq*, which implements the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").

The arbitration was conducted under the China International Economic and Trade Arbitration Commission (CIETAC) Emergency Arbitrator Procedures, Appendix III to the China International Economic and Trade Arbitration Commission (CIETAC) Arbitration Rules (Effective as of January 1, 2024) ("the Arbitration Rules"). The seat of the arbitration was Shanghai. The parties to the arbitration are the same as the parties here.

On October 24, 2024, an Emergency Arbitrator duly appointed under the CIETAC Rules issued an Emergency Arbitrator Decision ("Award") in favor of Petitioner, and provided it to all parties. Ex. C-1 (Emergency Arbitrator Award) and Ex. C-2 (Transmittal E-mail and Award to all parties) to Zhener Low Declaration in Support of Petition to Confirm and Enforce Foreign Arbitral Award ("Low Petition Decl"). The Award restrained Respondent from directly or indirectly, by any means whatsoever, selling, removing, dissipating, alienating, transferring, assigning, changing ownership, encumbering, or other similarly dealing with assets up to $5,366,500 USD. Ex. C-1 at 18-19.

Under § 207 of the FAA, this Court "shall confirm" the Emergency Arbitrator Decision unless it finds one of the grounds for refusal or deferral of confirmation specified in the Convention. Here, the Award is final and enforceable under the FAA and the Convention. As there are no grounds to refuse or defer recognition of the Award, the Award should be confirmed.

**PARTIES**

Petitioner is a corporation organized under the laws of the People's Republic of China, with its registered office at No. 101, 1 Floor, Building E, No. 210 Xuanqiu Road, Xuanqiao Town, Pudong New District, Shanghai, PRC.

Respondent Capital Asset Exchange and Trading, LLC ("Capital Asset") is a California Limited Liability Company. Its registered principal address is 5201 Great America Parkway Suite 320, Santa Clara, CA 95054.

**BACKGROUND**

**I.    The Dispute.**

On August 12, 2022, the Petitioner and the Respondent entered into a contract (No. TYEP2022081101), under which the Petitioner agreed to purchase from Respondent one second-hand lithography machine (specification: NIKON NSR- 2205112D) for a total contract price of $2,250,000 USD (hereinafter referred to as Contract I). Ex. C-3 at 1. The contract terms specified Exworks, with a delivery date before September 1, 2022, and a place of delivery in Germany. *Id.* at 1-2. Article 12 of Contract I further stipulated that: "If the seller delays the delivery, with exception of Force Majored [*sic*] causes specified in Clause 9 of this Contract, the Seller shall pay 3% of the contract amount to the Buyer as liquidated damages for each week overdue (less than one week shall be calculated as one week). If the overdue period exceeds 21 days, the Seller shall pay 15% of the contract amount to the Buyer. And the Buyer has the right to terminate the contract, and the Seller shall also bear the relevant losses." *Id.* at 2.

On August 22, 2022, the Petitioner and the Respondent entered into another contract (No. TYEP2022082201), under which the Petitioner agreed to purchase from the Respondent one second-hand lithography machine (specification: NIKON NSR- 2205112D) for a total contract price of $2,360,000 USD (hereinafter referred to as Contract II and, together with Contract I, the "Purchase Contracts"). *Id.* at 4. The contract terms specified Exworks, with a delivery date before December 31, 2022, and with a place of delivery in Europe. *Id.* at 4-5. Article 12 of Contract II is identical to the Article 12 of Contract I. *Id.* at 5.

1    Article 13 of both Purchase Contracts contain a CIETAC arbitration clause, stipulating

2  that: "Law application: All disputes in connection with this Contract or the execution thereof shall

3  be settled through friendly negotiations. In case no settlement can be reached through

4  negotiations, the case should then be submitted for China International Economic and Trade

5  Arbitration Commission Shanghai Branch arbitration. The arbitration fee shall be borne by the

6  losing party." *Id.* at 3 and 6.

7    As of September 26, 2022, the Petitioner had paid in full the total price of $ 4,610,000

8  USD under the Purchase Contracts. Ex. C-1 at 11.

9    On October 22, 2022, the Petitioner and the Respondent further signed Purchase Orders

10  (Nos. 25239 and 25268) for the purpose of deinstallation, bracket installation, rigging, crating and

11  logistics for tools in Contract I and deinstallation, bracket installation, rigging, crating and

12  logistics for tools in Contract II. Each purchase order was priced at US$32,500 each. *Id.* at 11-12.

13  Accordingly, the Petitioner paid $32,500 to the Respondent on November 4, 2022 and paid

14  another $32,500 USD to the Respondent on November 7, 2022. *Id.* at 12.

15    Subsequently, the Respondent failed to deliver the goods within the delivery period agreed

16  in the Purchase Contracts. *Id.*

17    From 2023, the Petitioner repeatedly urged the Respondent to deliver the goods by email,

18  expressed its serious concern about the Respondent's delay in delivery, and repeatedly requested

19  the Respondent to provide the latest progress of the deliveries and the expected delivery time. *Id.*

20  at 12. When the delivery still remained outstanding, Petitioner attempted to seek a refund but

21  Respondent indicated that it will communicate with its legal council and never got back to

22  Petitioner. *Id.*

23    The Respondent has still not delivered the goods and services to the Petitioner to date.

24  Neither has it provided a refund or corresponded to any email communications since May 13,

25  2024. *Id.*

26  **II.    The Arbitration**

27    On August 30, 2024, the Petitioner submitted its Application for Emergency Arbitration

28

Case No. To be assigned                3                Memorandum of Points and Authorities

1    Procedures and its appendices to CIETAC. *Id.* at 4.

2        On September 5, 2024, the Petitioner submitted a written request for arbitration to

3    CIETAC. *Id.*

4        An Emergency Arbitrator, Mr. Wei Sun,[1] was appointed on October 9, 2024. *Id.* On the

5    same date, the CIETAC simultaneously sent to the Petitioner and the Respondent, by e-mail and

6    express mail service, respectively, the Notice of Arbitration, the Notice of Acceptance of

7    Application for Emergency Arbitrator Procedures, the Declaration of Acceptance signed by the

8    Emergency Arbitrator, the Arbitration Rules, and the Arbitration Commission's Panel of

9    Arbitrators (the foregoing documents are in both Chinese and English); at the same time, CIETAC

10    also sent Respondent Petitioner's Application for Arbitration and its appendices, and Application

11    for Emergency Arbitration Procedures and its appendices were also sent to the Respondent. *Id.*

12        The arbitrator specifically noted in his award that these documents had been successfully

13    delivered to Respondent. *Id.* at 4-5. The e-mail addresses used for such service and notice were the

14    same ones at which Petitioner had successfully corresponded with Respondent as recently as May

15    2024, and the mail addresses were known business addresses according to what Respondent had

16    provided on its website and on the contracts at issue. *Id.*; Ex. C-4 (an e-mail chain containing a

17    May 13, 2024 E-mail from Austin Gill [agill@caeonline.com] of Respondent to Petitioner that

18    copies a series of other caeonline.com domain e-mail addresses).

19        On October 10, 2024, the arbitrator emailed to both parties the Arrangements of the

20    Emergency Arbitrator Procedure (the Arrangements) (in both Chinese and English), which

21    essentially describe the emergency arbitrator's procedures. Ex. C-1, at 5.

22        On October 20, 2024, the virtual hearing was held as scheduled. The Petitioner's legal

23    representative and appointed agent were present, but the Respondent failed to attend, without

24

25        [1] Arbitrator Sun is an equity partner at the well-known Chinese law firm Zhong Lun Law
26    Firm. According to his firm profile, he has extensive experience in arbitration and is a member of
27    both the New York Bar and the Chinese Bar. His firm profile and list of credentials may be found
      at the following link: https://en.zhonglun.com/team/sunwei.html
28

Case No. To be assigned                4                Memorandum of Points and Authorities

giving any reason. *Id.* Nor did the Respondent make any submissions. *Id.* at 10.

On October 24, 2024, the Petitioner obtained and filed confirmation of liability insurance for preservation of property in connection with its application for emergency relief.[2] *Id.* at 6.

All documents of this case under the Emergency Arbitrator Procedures were effectively served on the parties in accordance with Article 8 of the Arbitration Rules. *Id.*

### III.    The Award

Considering that the business model of the Respondent is to earn spread income as a middleman, and its capital is highly liquid, the Emergency Arbitrator recognized that the Respondent has a high probability of transferring its assets, and that the failure to take emergency measures to restrain the Respondent from disposing of its property may cause irreparable damage to the Petitioner. *Id.* at 17.

Based on the above facts and reasons, the arbitrator issued the following award:

(I) The Respondent is restrained from directly or indirectly, by any means whatsoever, selling, removing, dissipating, alienating, transferring, assigning, changing ownership, encumbering, or other similarly dealing with assets of the Respondent. The total amount of such assets shall not exceed the amount of damages, i.e. $5,366,500 USD. Such assets shall be in the form of, but not limited to:

(1) Assets owned, controlled, possessed, held for the benefit of, accessible to, or belonging to Respondent, in whole or in part;

(2) Assets in the Respondent's actual or constructive possession;

(3) Assets in the actual or constructive possession of, directly or indirectly, or owned, controlled, held by, accessible to, or belonging to, another corporation, partnership, trust, or any

---

[2] This is similar to a preliminary injunction bond. As such, no additional bond is needed for this interim measure to be enforced by the Court. *See, e.g., Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 926 (N.D. Cal. 2003) (Denying a motion to vacate an arbitration interim order intended to effectuate an interim payment to a party without ordering an extra bond, where the party entitled to the interim payment already established an escrow under control of the arbitration panel for the amount of the interim payment, analogous to a preliminary injunction.)

1    other entity, including, but not limited to, those in an account at any bank or savings and loan

2    institution, or held by any credit card processing agent, customer service agent, commercial mail

3    receiving agent, or mail depository/forwarding company, credit cooperative, retirement fund

4    custodian, monetary market or mutual fund, savings company, trustee, broker dealer, escrow

5    agent, title company, commodity trading company, precious metals dealer, or financial institution

6    or depositary institution of any kind or held for the benefit of the Respondent.

7         (II) The cost of this Emergency Arbitrator Procedure was RMB 30,000, which shall be

8    borne by the Respondent. The foregoing cost has been fully prepaid by the Petitioner, and the

9    Respondent shall pay RMB 30,000 to the Petitioner to compensate the Petitioner for the

10   procedural cost advanced by the Petitioner. *Id.* at 18-19.

11        The arbitrator further stated, for the avoidance of doubt, that his decision was binding upon

12   both parties and would take effect from the date of the decision. *Id.*

13                                    <u>**ARGUMENT**</u>

14   **I.     The Court Has Jurisdiction and Venue Is Proper.**

15        This Court has subject matter jurisdiction over actions or proceedings "falling under the

16   Convention" pursuant to 9 U.S.C. § 203. *See* 9 U.S.C. § 203 (any action or proceeding falling

17   under the New York Convention "shall be deemed to arise under the laws and treaties of the

18   United States," and the district courts therefore "shall have original jurisdiction over such an

19   action or proceeding, regardless of the amount in controversy.")

20        The Award is a foreign arbitral award subject to the New York Convention and therefore

21   may be confirmed by this Court. The New York Convention, a multilateral treaty to which the

22   United States is a party, applies to the recognition and enforcement of arbitral awards "arising out

23   of a legal relationship, whether contractual or not, which is considered as commercial," and "made

24   in the territory of a State other than the State where the recognition and enforcement of such

25   awards are sought, and arising out of differences between persons, whether physical or legal."

26   New York Convention, Art. I, § 1; *see also* 9 U.S.C. § 202. The New York Convention also

27   applies to "arbitral awards not considered as domestic awards in the State where their recognition

28

---

Case No. To be assigned                    6                    Memorandum of Points and Authorities

1  and enforcement are sought." *Id.* The FAA deems the New York Convention to be enforceable in

2  U.S. courts. *See* 9 U.S.C. § 201.

3       The Award at issue here arises out of the two commercial contracts. Moreover, the award

4  falls within either prong of the New York Convention. The Award was made outside of the United

5  States and therefore was made "in the territory of a State other than the State where the

6  recognition and enforcement of such awards are sought." New York Convention, Art. I, § 1. It is

7  also not a "domestic award" in the United States. *See id.*

8       This Court has personal jurisdiction over Respondent because Respondent is located in this

9  District and incorporated in California.

10      Further, venue is proper in any district authorized by the general venue statute of 28 U.S.C.

11  § 1391. Here, California is proper under the general venue statute because Respondent is

12  incorporated and located in this District in California.

13  **II.     The Award Should Be Confirmed.**

14      **A.     Applicable Legal Standard**

15      Under the Convention, codified in 9 U.S.C., Chapter 2, the Court "shall confirm the award

16  unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the

17  award specified in the [] Convention." 9 U.S.C. § 207; see also *Castro v. Tri Marine Fish Co.*

18  *LLC,* 921 F.3d 766, 773 (9th Cir. 2019) (A court must confirm a foreign arbitral award unless the

19  party resisting enforcement meets its "substantial" burden of proving one of seven narrowly

20  interpreted defenses.)

21      The seven grounds for refusal of enforcement under Article V are as follows:

22      1. Recognition and enforcement of the award may be refused, at the request of the party
23      against whom it is invoked, only if that party furnishes to the competent authority where
        the recognition and enforcement is sought, proof that:
24
25      (a) The parties to the agreement referred to in article II were, under the law applicable to
        them, under some incapacity, or the said agreement is not valid under the law to which the
26      parties have subjected it or, failing any indication thereon, under the law of the country
        where the award was made; or
27      (b) The party against whom the award is invoked was not given proper notice of the

28

---

appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

Article V, Convention.

Confirmation is a summary proceeding, and the party that seeks to avoid summary confirmation of the award has the heavy burden of proving that one of the seven grounds applies. *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1096 (9th Cir. 2011) ("The seven grounds for refusing to confirm an award are set out in Article V of the Convention. These defenses are construed narrowly, and the party opposing recognition or enforcement bears the burden of establishing that a defense applies."); *Castro*, 921 F.3d, at 773 (9th Cir. 2019) ("Confirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm.")

**B.      No Grounds For Refusal of Enforcement Apply.**

Here, the 17-page award contained extensive factual discussion and reasoning, was issued by a well-qualified CIETAC arbitrator and upon due notice at multiple stages of the proceedings to Respondent, and the parties were given the opportunity to make written submissions as well as

attend a hearing before the arbitrator, prior to issuance of the award. Ex. C-1.

1.  **Interim Awards For Preliminary Equitable Relief Are Subject To Confirmation Under The FAA.**

Article V(1)(e) of the Convention only provides for non-enforcement where "the award has not yet become binding on the parties." The courts' willingness and authority to enforce interim arbitration awards as final and binding is well-established in the 9th Circuit. The Ninth Circuit has held that "temporary equitable orders calculated to preserve assets or performance needed to make a potential final award meaningful ... are final orders that can be reviewed for confirmation and enforcement by district courts under the FAA." *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1023 (9th Cir. 1991). This is because temporary equitable relief in arbitration may be essential to preserve assets or enforce performance which, if not preserved or enforced, may render a final award meaningless. *Id.* at 1022–23; *See also Island Creek Coal Sales Co. v. City of Gainesville*, 729 F.2d 1046, 1059 (6th Cir. 1984) (upholding the confirmation of an award that preserved the status quo, reasoning that the injunction issued by the arbitral tribunal would be meaningless absent judicial confirmation of it); *S. Seas Navigation Ltd. v. Petroleos Mexicanos,* 606 F. Supp. 692, 694 (S.D.N.Y. 1985) (holding that if "an arbitral award of equitable relief based upon a finding of irreparable harm is to have any meaning at all, the parties must be capable of enforcing or vacating it at the time it is made".)

Courts have therefore found that an interim arbitration order is sufficiently "final" to be confirmed and enforced under the FAA. *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 926, 937 (N.D. Cal. 2003) (finding an arbitration panel's interim order that *e.g.* sets up an escrow account or requires a party to post a letter of credit as interim security pending arbitration "final".); *see also* Ex. C-1, at 16-17 (stating for the avoidance of doubt that the decision was binding on the parties).

Further, courts have applied the same approach to emergency arbitrator decisions as to interim measures issued by the substantive arbitral tribunal. *See Yahoo! Inc. v. Microsoft Corp.,* 983 F. Supp. 2d 310 (S.D.N.Y. 2013) (confirming an award issued by an emergency arbitrator

1    appointed under the AAA rules to grant emergency relief "until the matter can be fully and fairly

2    decided by a three arbitrator panel of industry experts following discovery"); *see also Kondot S.A.*

3    *v. Duron LLC,* 586 F. Supp. 3d 246, 259 (S.D.N.Y. 2022) (granting petition to confirm and

4    enforce three partial final awards issued by emergency arbitrators under the Society of Maritime

5    Arbitrators arbitration rules, including an award ordering respondent to pay a pre-award security.)

6        Here, the Award is clear that Respondent is restrained from engaging in certain activities

7    with its assets, and that its decision is binding upon both parties and shall take effect from the date

8    it is made. Ex. C-1, at 18-19. Therefore, the Award here is rightly binding and final for the

9    purposes of enforcement under the Convention.

10            ***2.    No Other Grounds Exist For Refusal To Confirm.***

11        Article V(1)(b) of the Convention "essentially sanctions the application of the forum

12    state's standards of due process," in this case, the United States' standards of due process. *Karaha*

13    *Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 298 (5th

14    Cir. 2004). The core of due process is notice reasonably calculated to inform the respondent of the

15    proceeding and an opportunity to be heard. *See E.g., Mullane v. Central Hanover Bank & Trust*

16    *Co.,* 339 U.S. 306, 313 (1950); *In re Drexel Burnham Lambert Group, Inc.,* 995 F.2d 1138, 1144

17    (2d Cir. 1993).

18        Successful actual notice is not required; the adverse party need only prove an attempt to

19    provide actual notice. *Mesa Valderrama v. United States*, 417 F.3d 1189, 1197 (11th Cir. 2005).

20    So long as the respondent is adequately noticed to be informed of the proceeding and had an

21    opportunity to be heard, the respondent's failure to attend the proceeding is not a violation of due

22    process under Article V(1)(b). *Anhui Provincial Import and Export Corp. v. Hart Enterprises*

23    *International, Inc.*, 1996 WL 229872 at 3-4 (S.D.N.Y. 1996) (granting the petition to confirm an

24    arbitration award issued in China where the respondent had proper notice of the proceeding and

25    had a full opportunity to present a defense but failed to do so); *Guarino v. Productos Roche S.A.,*

26    839 F. App'x 334, 336 (11th Cir. 2020) (granting the petition to confirm an arbitration award

27    issued in Venezuela where the respondent defaulted in arbitration, holding that due process is not

28

violated where the claimant has made several reasonably calculated attempts to notify respondent pursuant to the arbitral rules agreed by parties); *Empresa De Telecommunicaciones De Bogota S.A. E.S.P. v. Mercury Telco Grp., Inc.,* 670 F. Supp. 2d 1357, 1362 (S.D. Fla. 2009) (granting petition to confirm an arbitration award issued in Colombia where the respondent had notice of the arbitration proceedings but chose not to participate.)

Here, all documents of this arbitration case under the inter partes emergency arbitration procedures had been effectively served on the parties in accordance with the Arbitration Rules. Ex. C-1, at 6. Respondent was adequately noticed and informed of the proceeding, and was given the opportunity to both submit written materials and be heard at a hearing, but chose not to submit materials or attend the hearing. *Id.* at 10. The due process requirement under Article V(1)(b) of the Convention is met, and the Emergency Arbitrator Decision should be recognized and enforced.

## **CONCLUSION**

Petitioner respectfully requests that this Court issue an order confirming the Decision.

Respectfully Submitted,

DATED: November 26, 2024

**MORROW NI LLP**

By: _____

Zhener Low
zhener@moni.law
Morrow Ni LLP
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166

*Attorneys for Petitioner*

# Exhibit C

## [Entire Exhibit Proposed to be Filed Under Seal]



Zhener Low (State Bar No. 355279)
zhener@moni.law
**Morrow Ni LLP**
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166

*Attorneys for Petitioner*
*Shanghai Tyron Semiconductor Equipment Co., Ltd.*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

SHANGHAI TYRON SEMICONDUCTOR
EQUIPMENT CO., LTD., a Chinese
Corporation

              Petitioner,

    v.

Capital Asset Exchange and Trading, LLC, a
California Limited Liability Company,


              Respondent.

Case No.

**DECLARATION OF ZHENER LOW IN
SUPPORT OF PETITION TO CONFIRM
AND ENFORCE FOREIGN ARBITRAL
AWARD**

Case No. To be assigned

Low Petition Decl

**DECLARATION OF ZHENER LOW IN SUPPORT OF PETITION TO CONFIRM AND ENFORCE FOREIGN ARBITRAL AWARD**

I, ZHENER LOW, declare as follows:

1.    I am over the age of 18 and have personal knowledge, information and belief of the matters that I am declaring here.

2.    I am counsel for Petitioner in the above-captioned action.

3.    A true and correct copy of the Emergency Arbitrator Decision dated October 24, 2024 in China International Economic and Trade Arbitration Commission ("CIETAC") Case No. (2024) CIETAC SH No. 018823 in its original Chinese language, along with its English translation under cover of a Declaration of Accurate Translation, is attached hereto as **Exhibit C-1** ("Award").

4.    A true and correct copy of CIETAC's transmittal cover e-mail sending the Award to all Parties on the same day of October 24, 2024, is attached hereto as **Exhibit C-2**.

5.    True and correct copies of two Purchase Contracts signed between Petitioner and the Respondent (No. TYEP2022081101 signed on August 12, 2022, and No. TYEP2022082201 signed on August 22, 2022) are attached hereto as **Exhibit C-3**.

6.    A true and correct copy of an e-mail chain containing a May 13, 2024 E-mail from Austin Gill [agill@caeonline.com] of Respondent to Petitioner that copies a series of other caeonline.com domain e-mail addresses is attached hereto as **Exhibit C-4**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Executed on November 26, 2024 at San Carlos, California.

By: _____

Zhener Low

# Exhibit C-1

[Entire Exhibit Proposed to be Filed

Under Seal]

Zhener Low (State Bar No. 355279)
zhener@moni.law
**Morrow Ni LLP**
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166

*Attorneys for Petitioner*
*Shanghai Tyron Semiconductor Equipment Co., Ltd.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

SHANGHAI TYRON SEMICONDUCTOR
EQUIPMENT CO., LTD., a Chinese
Corporation

        Petitioner,

   v.

Capital Asset Exchange and Trading, LLC, a
California Limited Liability Company,


       Respondent.

Case No.

**DECLARATION OF ACCURATE
TRANSLATION**

Case No. To be assigned

Declaration of Accurate Translation

1        I, Li Baoquan, declare as follows:

2        1.    I am above 18 years of age and I am not a party to this action.

3        2.    I am a Chinese-English (and vice versa) translator with Beijing Hengyi Translation

4 Co., Ltd., Room 709, People's Daily Animation Technology Industrial Park, Chaoyang District,

5 Beijing, the People's Republic of China.

6        3.    I am fluent in the Chinese and English languages. Chinese is my native language. I

7 majored in English at Qufu Normal University in China, and passed the TEM-8 college English

8 major test. Further, I have had approximately 10 years of experience as a Chinese-English translator,

9 including experience translating legal documents.

10        4.    I confirm that the accompanying approximately 18-page document entitled "China

11 International Economic and Trade Arbitration Commission Emergency Arbitrator Decision" in

12 (2024) CIETAC SH No. 018823 is a complete and accurate English translation of the original

13 Chinese-language written document dated October 24, 2024, to the best of my ability and

14 knowledge.

15        I declare under penalty of perjury under the laws of the United States of America and the

16 laws of the State of California that the foregoing is true and correct.

17 Executed on November 14, 2024, at Linyi, China.

18

19 Li Baoquan

20

21

22

23

24

25

26

27

28

# China International Economic and Trade Arbitration Commission

# Emergency Arbitrator Decision

| Claimant: | Shanghai Tyron Semiconductor Equipment Co., Ltd. |
|---|---|
| Legal representative: | Li Hua |
| Address: | No. 101, 1 Floor, Building E, No. 210 Xuanqiu Road, Xuanqiao Town, Pudong New District, Shanghai, PRC. |
| Agent: | Bai Xiao, Zhang Min, Huo Jiaorong, Beijing Zhong Wen Law Firm<br>Gao Min, Shanghai Tyron Semiconductor Equipment Co., Ltd. |
| Respondent: | Capital Asset Exchange and Trading, LLC |
| Address 1: | 5201 Great America Parkway, Suite 320, Santa Clara, CA, USA |
| Address 2: | 5201 Great America Parkway, Suite 272, Santa Clara, CA, USA |
| Address 3: | 7500 Rialto Boulevard, Suite 250 - #2778, Austin, TX, USA |
| Address 4: | Frost Bank Tower, 401 Congress Ave, Ste 1760, Austin, TX, USA |





Shanghai

October 24, 2024

1

**Emergency Arbitrator Decision**

(2024) CIETAC SH No. 018823

On August 30, 2024, the Claimant, Shanghai Tyron Semiconductor Equipment Co., Ltd. (hereinafter referred to as the "Claimant") submitted the "Application for Emergency Arbitration Procedures" and its appendices according to the arbitration clauses under the two *Contracts* (Nos. TYEP2022081101 and TYEP2022082201) signed with Capital Asset Exchange and Trading, LLC (hereinafter referred to as the "Respondent"), as well as the *China International Economic and Trade Arbitration Commission (CIETAC) Emergency Arbitrator Procedures* (hereinafter referred to as the *Rules of Emergency Arbitrator Procedures*), Appendix III to the *China International Economic and Trade Arbitration Commission (CIETAC) Arbitration Rules* (hereinafter referred to as the *Arbitration Rules*), which came into effect on January 1, 2024.

On September 5, 2024, the Claimant submitted a written request for arbitration to the China International Economic and Trade Arbitration Commission (hereinafter referred to as the "Arbitration Commission") Shanghai Sub-Commission in accordance with the above arbitration clauses.

The Arbitration Commission accepted the arbitration case of the dispute under the aforesaid contracts after the Claimant had gone through the relevant formalities. The case number is SHG20240681.

The Arbitration Court of the Arbitration Commission Shanghai Sub-Commission (hereinafter referred to as the "Arbitration Court") decided to apply the Emergency Arbitrator Procedure after a preliminary examination in accordance with the *Rules of Emergency Arbitrator Procedures* and determined that Chinese should be used as the language of the procedure. The President of the Arbitration Court of the Arbitration Commission appointed Mr. SUN Wei as the Emergency Arbitrator on October 9, 2024, after the Claimant paid the fees for the Emergency Arbitrator Procedures in advance.

On October 9, 2024, the Arbitration Court simultaneously sent to the Claimant and the Respondent, by e-mail and express mail service, respectively, the Notice of Arbitration, the Notice of Acceptance of Application for Emergency Arbitrator Procedures, the Declaration of Acceptance signed by the Emergency Arbitrator, the *Arbitration Rules*, and the Arbitration Commission's *Panel of Arbitrators* (the foregoing documents are in both Chinese and English); at the same time, the Application for Arbitration and its appendices, the "Application for Emergency Arbitration Procedures" and its appendices submitted by the Claimant were also sent to the Respondent.

The aforesaid letters sent to the Respondent by e-mail were successfully delivered to the Respondent's e-mail addresses provided by the Claimant [info@caeonline.com (the Respondent's e-mail address set out on the first page

of the two *Contracts*); agill@caeonline.com; candace.chen@caeonline.com; estone@caeonline.com; ahung@caeonline.com; shuang@caeonline.com; achoo@caeonline.com; wchang@caeonline.com; jsantos@caeonline.com; llu@caeonline.com, hereinafter collectively referred to as the "Respondent's e-mail addresses"]; the addresses to which the Respondent was sent by express mail service are the four addresses of the Respondent as set out on the cover page of this Decision, of which Address 1 is the address of the Respondent on its official website and the municipal website as provided by the Claimant; Address 2 is the address of the Respondent as set out on the first page of the two *Contracts*; Addresses 3 and 4 are the other business or contact addresses of the Respondent provided by the Claimant. Except for the letter sent to Address 4, which was returned by the courier company due to "the addressee had moved away from the address on the waybill", the letters sent to the other addresses were delivered on October 14, 2024.

On October 10, 2024, the Emergency Arbitrator emailed to both parties the Arrangements of the Emergency Arbitrator Procedure (the "Arrangements")(in both Chinese and English), which made arrangements for procedural matters, including but not limited to: clarifying that email is the first choice for submission of documents and service of notices under the Emergency Arbitrator Procedure; determining that the Emergency Arbitrator Procedures hearing would be held online on October 20, 2024 with a hearing session link attached; and setting forth the relevant deadlines for both parties to submit the relevant materials. The Arrangements also clarifies that: "In consideration of the urgency of the Procedure and in order to ensure that the proceedings are conducted efficiently, the Parties may choose to submit their written submissions and evidentiary materials in this Procedure and to communicate in either Chinese or English. Translations are not required for documents submitted by the Parties in Chinese or English. Materials submitted in languages other than Chinese and English shall be accompanied with Chinese or English translations. The language of the hearing of the Procedure will be Chinese. If requested by a Party, the Emergency Arbitrator may engage an interpreter for the hearing, with the cost of the translation to be borne by the Party making the application." The foregoing Emergency Arbitrator Procedure Agenda and Schedule (in both Chinese and English) had been successfully delivered to the Respondent's email address.

On October 20, 2024, the virtual hearing of the Emergency Arbitrator Procedure was held as scheduled, the Claimant's legal representative and appointed agent were present, and the Respondent failed to send an agent to attend after effective notice, without giving any reason. During the hearing, the Claimant stated its claims for emergency relief and the facts and grounds on which it was based, explained the evidence, and answered the inquiries of the Emergency Arbitrator.

After the hearing, the Claimant submitted two "Clarifications on the Requests in the Emergency Arbitrator Procedures", clarifying the first request of its "Application for Emergency Arbitration Procedures", which was "To freeze the

assets under the Respondent's name", and withdrawing the second and third requests of the "Application for Emergency Arbitration Procedures" ("To order the Respondent to disclose, within three days from the date of the Emergency Arbitrator's Award, its accurate financial statements as of the date of the Emergency Arbitrator's Award, including but not limited to the financial assets held by the Respondent inside and outside the United States" and "To order the Respondent to make full disclosure of information relating to the goods under the Purchase Contract, including but not limited to the location and condition of the goods, within three days from the date of the Emergency Arbitrator's Award"). The foregoing documents sent by the Claimant were all copied to the Respondent's e-mail addresses at the same time.

On October 24, 2024, the Claimant filed a liability insurance for preservation of property in connection with its application for emergency relief.

All documents of this case under the Emergency Arbitrator Procedures have been effectively served on the parties in accordance with Article 8 of the *Arbitration Rules*.

The Emergency Arbitrator has now completed the examination of the application for emergency relief. In accordance with Article 23, Paragraph (2), of the *Arbitration Rules* and Appendix III, *Rules of Emergency Arbitrator Procedures*, the Emergency Arbitrator made this decision.

The Application for Emergency Relief and the Defense, the Emergency Arbitrator's Opinion and Decision are set forth below:

### I. Application for Emergency Relief and Defense

(I) The Claimant's Application for Emergency Relief and its Main Grounds

According to the Claimant's "Application for Emergency Arbitration Procedures" dated August 26, 2024 and "Clarifications on the Requests in the Emergency Arbitrator Procedures" dated October 20 and October 21, 2024, respectively, the emergency relief measures applied for by the Claimant in this case are as follows:

The Respondent is restrained from directly or indirectly, by any means whatsoever, selling, removing, dissipating, alienating, transferring, assigning, changing ownership, encumbering, or other similarly dealing with assets of the Respondent. The total amount of such assets shall not exceed the amount of damages, i.e. $5,366,500 USD (the "Amount of Damages"). Such assets shall be in the form of, but not limited to:

(1) Assets owned, controlled, possessed, held for the benefit of, accessible to, or belonging to Respondent, in whole or in part;

(2) Assets in the Respondent's actual or constructive possession;

(3) Assets in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, or belonging to, any other corporation, partnership, trust, or any

4

other entity directly or indirectly, but not limited to, any assets held by or for the Respondent in any account at any back or saving and loan institution, or with any credit card processing agent, customer service agent, commercial mail receiving agency, or mail holding or forwarding company, or any credit union, retirement fund custodian, money market or mutual fund, storage company, trustee, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind.

The specific grounds for the Claimant's application for the above emergency relief measures are, inter alia, as follows:

1. The Claimant is entitled to apply to the Arbitration Commission for emergency relief measures

The Claimant and the Respondent entered into two *Contracts* for the purchase of second-hand lithography machine (Contract Nos. TYEP2022081101 and TYEP2022082201) on August 12, 2022 and August 22, 2022, respectively, and Article 13 of both Contracts stipulates that: "Law application: All disputes in connection with this Contract or the execution thereof shall be settled through friendly negotiations. In case no settlement can be reached through negotiations, the case should then be submitted for China International Economic and Trade Arbitration Commission Shanghai Sub-Commission. The arbitration fee shall be borne by the losing party." Therefore, the Arbitration Commission has jurisdiction over the disputed matters under the two *Contracts*.

In addition, in order to ensure the performance of the two *Contracts*, the Claimant and the Respondent signed two Purchase Orders (Nos. PO25239 and PO25268) on October 19, 2022, which made additional agreements on the payment of additional handling costs of the equipment purchased under the two *Contracts* (involving the costs of deinstallation, bracket installation, rigging, crating and logistic of the equipment, etc.). The two Purchase Orders clearly set out the numbers of the two *Contracts* in the "Specifications" section, making it clear that the Purchase Orders are made for equipment disposal services on the basis of the *Contracts*. Two Purchase Orders did not contain the dispute resolution clause.

Article 14, Paragraph (1) of the *Arbitration Rules* stipulates that: "1. The Claimant may initiate a single arbitration concerning disputes arising out of or in connection with multiple contracts, provided that: (1) such contracts consist

of a principal contract and its ancillary contract(s)，or such contracts involve the

same parties as well as legal relationships of the same nature, or such contracts involve related subject matters; (2) the disputes in such contracts arise out of the same transaction or the same series of transactions; and (3) the arbitration agreements in such contracts are identical or compatible." Given that the two Purchase Orders clearly set forth that the relevant services are the processing services for the equipment agreed upon in the two *Contracts*, and that the

services and fees payment under the Purchase Orders arise from the performance of the *Contracts*, and that the performance of the Purchase Orders by the two parties must depend on the performance of the *Contracts*, the Purchase Orders are essentially the supplements to the two *Contracts*, the Contracts and the Purchase Orders have a principal-subordinate relationship, and the performance of the Purchase Orders falls within the scope of the *Contract* and shall be subject to the same jurisdiction. Therefore, the disputed matters under the Purchase Orders shall also be subject to the jurisdiction of the Arbitration Commission in accordance with Article 13 of the two *Contracts*.

According to Article 1 of the *Rules of Emergency Arbitrator Procedures*, Appendix III of the *Arbitration Rules*, a party requiring emergency relief may apply for the Emergency Arbitrator Procedures based upon the applicable law or the agreement of the parties. Therefore, the Claimant is entitled to apply to the Arbitration Commission for emergency relief in respect of the disputes under the two *Contracts* and the two Purchase Orders.

2. There is a risk of property transfer by the Respondent, making this application urgent

Firstly, the Respondent has faced and is about to face a number of lawsuit cases in the United States and other jurisdictions, including a lawsuit filed by Semiconductor Global Solutions against the Respondent in the Federal Court in Texas, USA. Two of the three cases filed against Claimant in the United States in 2024 involve circumstances similar to those in this case. According to the Claimant, the Respondent is accustomed to entering into contracts with counterparties in a relatively simple manner, resulting in most of the cases it faces being litigated in the United States. At the same time, as the dispute resolution clauses in the two *Contracts* stipulate arbitration, the Claimant is unable to apply for a freezing order or file a lawsuit directly with the court in the place where the Respondent's property is located.

Secondly, the main business of the Respondent is to earn spread income as a trader/agent, and its capital is highly liquid, so it may not have real estate or inconveniently transferable assets under its name, resulting in a higher risk of asset transfer.

Thirdly, the Respondent's involvement in the lawsuit and other information known to the Claimant indicate that there is a risk of deterioration in the Respondent's financial and credit status, and that the Respondent may be engaging in systematic fraudulent conduct. In addition to the above cases in the U.S. court, there have been a number of similar cases arising from the Respondent's failure to fulfill its contractual obligations, and a number of companies in Chinese Mainland, Taiwan (China), South Korea, and Singapore have encountered a situation similar to this case after making payments to the Respondent. In the communication between the Claimant and the Respondent, the Respondent also showed malicious concealment behavior. Therefore, the

6

Respondent's breach of contract is highly suspicious and may be fraudulent, and there is a high risk of asset transfer. At the same time, the Respondent is still in a state of ostensibly normal operation and may continue to trade, with a high likelihood of receiving incoming funds.

3. The Claimant faces the risk of unable to fully recover its losses through the arbitration award

Due to the Respondent is very likely to transfer its assets, there is a high risk that the Respondent's financial status will further deteriorate if relief measures are not taken immediately. Even if the Claimant win the subsequent arbitration, there is a high likelihood that the award will not be actually enforced and the Claimant will not be fully compensated.

4. If no relief is granted, the damages suffered by the Claimant will far exceed the consequences that may be borne by the Respondent

The Claimant faces serious and irreparable losses due to the Respondent's failure to truthfully report on the status of the goods involved in the case and the Respondent's high risk of asset transfer. On the other hand, if the relief measures requested by the Claimant are taken, the adverse consequences to the Respondent will be minimal. In addition, the Claimant can submit a liability insurance issued by an insurance company to prevent any loss suffered by the Respondent as a result of the relief measures under this application. Therefore, the damages suffered by the Claimant (in the absence of the relief measures) will far exceed any consequences that the Respondent may suffer (if the relief measures are taken).

5. The Claimant is very likely to win the arbitration case

The facts of the case are very clear: the Claimant had paid the full price under the purchase contracts; the Respondent had failed to deliver any goods under the purchase contracts; and the Respondent had taken possession of the contract money and refused to refund. Therefore, the Claimant has preliminarily established the substantive basis for its claim.

6. The interim relief measures applied for by the Claimant, if supported by the Emergency Arbitrator, will be enforceable.

The Respondent is registered in the State of California and headquartered in the State of Texas, USA, and has a domicile in both places. Therefore, the places of enforcement in this case are primarily California and Texas, USA.

At the federal level, the United States is a party to the *New York Convention* and has introduced a series of laws and regulations guaranteeing the enforcement of international arbitration awards. The emergency relief award to be issued in this case is not contrary to the Convention and the relevant laws, and can be recognized and enforced in the United States.



7

At the state legislative level, Article 172.175 "Interim Orders" of the *Texas Code of Civil Procedure and Remedies* stipulates that a party to an arbitration may request the court to enforce an order for interim protection measures granted by an arbitral tribunal. Article 1281.8 "Application for Interim Relief in Connection with Arbitration Dispute" of the *California Code of Civil Procedure* stipulates that a court may issue interim protection measures, including asset seizure orders and preliminary injunctions, at the request of a party prior to or during the arbitration.

At the case level, U.S. Case Law supports the finality and enforceability of protective emergency measures (e.g., interim measures) for enforcement purposes, and precedents confirm that in the U.S. judicial system, an emergency arbitrator's emergency relief award may be deemed as equally enforceable as an arbitral tribunal's award regarding the case itself.

The U.S. courts have recognized and enforced awards issued by arbitration commissions more than once.

In summary, U.S. federal law, the *New York Convention*, and state laws all provide a legal basis for the enforcement of the emergency arbitrator's decision in this case. In particular, it is worth noting that the provisions of the Texas law on "interim orders" can be referred to in this case when applying for enforcement in the State of Texas. From the perspective of finality, the arbitration award of the Emergency Arbitrator is more final than an interim measure (interim order) and can be enforced in Texas.

(II) Defense of the Respondent

The Respondent did not submit any written materials in this proceeding and was absent from the hearing.

## II. Emergency Arbitrator's Opinion

The Emergency Arbitrator, after thoroughly reviewing the written materials submitted by Claimant and fully listening to Claimant's opinions at the hearing, commented on Claimant's Application for Emergency Relief as follows:

(I) Basic facts of the case

The Emergency Arbitrator's analysis and understanding of the case shall not be binding on the subsequent fact finding of the case by the arbitral tribunal. Based on the evidence and statements currently submitted by Claimant, the Emergency Arbitrator understands the background of the transactions and disputes related to this case as follows:

On August 12, 2022, the Claimant and the Respondent entered into the *Contract* (No. TYEP2022081101), under which the Claimant agreed to purchase from Respondent one second-hand lithography machine (specification: NIKON NSR-2205i12D) for a total contract price of $2,250,000 USD (hereinafter referred to

as "Contract I"). The term of the contract price under Contract I was Exworks, with a delivery date before September 1, 2022, and a place of delivery in Germany. Pursuant to Article 7 of Contract I, the Claimant shall pay 30% of the contract price by August 15 and 70% by September 1. Article 12 of Contract I further stipulates that: "If the seller delays the delivery, with exception of Force Majored causes specified in Clause 9 of this Contract, the Seller shall pay 3% of the contract amount to the Buyer as liquidated damages for each week overdue (less than one week shall be calculated as one week). If the overdue period exceeds 21 days, the Seller shall pay 15% of the contract amount to the Buyer. And the Buyer has the right to terminate the contract, and the Seller shall also bear the relevant losses."

On August 22, 2022, the Claimant and the Respondent entered into the contract (No. TYEP2022082201), under which the Claimant agreed to purchase from the Respondent one second-hand lithography machine (specification: NIKON NSR-2205i12D) for a total contract price of $2,360,000 USD (hereinafter referred to as "Contract II" and, together with Contract I, the "Purchase Contracts"). The term of the contract price under Contract II was Exworks, with a delivery date before December 31, 2022, and a place of delivery in Europe. Pursuant to Article 7 of Contract II, the Claimant shall pay 30% of the contract price by August 25 and 70% two weeks prior to the release of the equipment (before December 31, 2022 estimated). Article 12 of Contract II is identical to the Article 12 of Contract I.

With respect to the price of Contract I, the Claimant paid the Respondent $675,000 USD on August 15, 2022, $1,000,000 USD on September 2, 2022, and the remaining $575,000 USD on September 9, 2022. With respect to the price of Contract II, the Claimant paid the Respondent $708,000 USD on August 25, 2022, $425,000 USD on September 9, 2022, $700,000 USD on September 19, 2022, and the remaining $527,000 USD on September 26, 2022. As of September 26, 2022, the Claimant had paid in full the total price of $ 4,610,000 USD under the Purchase Contracts.

On September 8, 2022, Erik Stone, an employee of the Respondent, sent an email to the Claimant, informing of the total logistical costs involved in the purchase of the second-hand lithography machine and the deinstallation schedule: "We received a deinstallation quote early this morning of $38,000 USD, this includes using your brackets. In total between deinstallation, bracket installation, rigging, and crating, the total cost of logistics comes to $65,000 USD (or $32,500 per system). Deinstall would begin the week of 9/19 and the systems would likely be available for pickup by Daotone on 9/30, or early the following week." On September 12, the Respondent sent the Claimant the invoices (No. 25239 and No. 25268) for $32,500 USD each.

On October 22, 2022, the Claimant and the Respondent signed the Purchase Orders (Nos. 25239 and 25268) for the purpose of "deinstallation, bracket

9

installation, rigging, crating and logistic for tool in contract No. TYEP2022081101" and "deinstallation, bracket installation, rigging, crating and logistic for tool in contract No. TYEP2022082201". The amount of the two purchase orders was $32,500 USD each.

With respect to payment under the two purchase orders, the Claimant paid $32,500 USD to the Respondent on November 4, 2022, and paid another $32,500 USD to the Respondent on November 7, 2022 through Daotone Logistics (Shanghai) Co., Ltd.

Subsequently, the Respondent failed to deliver the goods within the delivery period agreed in the Purchase Contract.

From 2023, the Claimant repeatedly urged the Respondent to deliver the goods by email, expressed its serious concern about the Respondent's delay in delivery, and repeatedly requested the Respondent to provide the latest progress of the deliveries and the expected delivery time. On February 3, 2023, the Respondent apologized for the delayed reply, stating that it was still in the process of submitting an application to the German Federal Office for Economic Affairs and Export Control (BAFA), and that the German Customs might need to inspect the goods. On March 16, 2023, the Respondent indicated that it was still awaiting approval from BAFA.

On January 18, 2024, the Claimant sent an email to the Respondent again and requested the Respondent to provide the expected time for the delivery of the goods and inquired about the approval progress of the BAFA. The Claimant also indicated that if the Respondent was unable to deliver the goods, it should refund the Claimant as soon as possible; and that if the goods could not be delivered in a short time, the Claimant would need to go to the warehouse to inspect the equipment. On January 23, 2024, the Respondent replied that it was unable to complete the export or to provide the delivery time due to the lack of compliance approvals and that it could not allow the Claimant to inspect the equipment. For the Claimant's refund claim, the Respondent indicated that it would communicate with its legal counsel.

The Respondent has still not delivered the goods to the Claimant so far, and has not responded to any communication emails since May 13, 2024.

In addition, in 2024, the Respondent was sued for breach of contract in U.S. courts by Semiconductor Global Solutions (hereinafter referred to as "SGS"), Epicrew USA and Cubit Pte Ltd. The indictment filed by SGS in the U.S. Federal Court of Texas stated that: "CAE (abbreviation for the Respondent, annotated by the Emergency Arbitrator) promised SGS it could and would deliver the Equipment on a truncated timeline; obtained $2,000,000 USD from SGS under this false pretense; and strung SGS along for over a year before refusing to deliver the Equipment or issue a refund to SGS of its purchase price."

(II) Jurisdiction of the Emergency Arbitrator

Article 80, Paragraph (2) of the *Arbitration Rules* provides that "Where the arbitral tribunal has not yet been formed, a party may apply for emergency relief pursuant to the CIETAC Emergency Arbitrator Procedures (Appendix III)." Article 1, Paragraph (1) of Appendix III to the *Arbitration Rules* provides that: "A party requiring emergency relief may apply for the Emergency Arbitrator Procedures based upon the applicable law or the agreement of the parties." Accordingly, for disputes under the jurisdiction of the Arbitration Commission, the parties may apply for emergency relief before the constitution of the arbitral tribunal.

In this case, the Claimant's application for emergency relief concerned disputes under two purchase contracts and two purchase orders. After submitting the "Application for Emergency Arbitration Procedure", the Claimant also submitted an application for arbitration to the Arbitration Commission in respect of the disputes under the two purchase contracts and the two purchase orders, and the arbitration case had been accepted by the Arbitration Commission. The arbitral tribunal has not yet been formed.

In view of this, the core issue in determining the jurisdiction of the emergency arbitrator over this case was whether the parties had agreed to arbitrate the disputes under the two purchase contracts and the two purchase orders.

In this case, the arbitration clause relied upon by the Claimant is Article 13 of the two purchase contracts, which provides that: "Law application: All disputes in connection with this Contract or the execution thereof shall be settled through friendly negotiations. In case no settlement can be reached through negotiations, the case should then be submitted for China International Economic and Trade Arbitration Commission Shanghai Sub-Commission. The arbitration fee shall be borne by the losing party." Therefore, it is clear that the Emergency Arbitrator has jurisdiction over the request for emergency relief arising from the dispute over the purchase contracts.

The two purchase orders themselves do not contain arbitration clauses. The Claimant argued that the two Purchase Orders clearly set forth that the relevant services are the processing services for the equipment agreed upon in the two Purchase Contracts, and that the services and fees payment under the Purchase Orders arise from the performance of the Purchase Contracts, and that the performance of the Purchase Orders by the two parties must depend on the performance of the Purchase Contracts, the Purchase Orders are essentially the supplements to the two Purchase Contracts, the Purchase Contracts and the Purchase Orders have a principal-subordinate relationship, and the performance of the Purchase Orders falls within the scope of the Purchase Contracts and shall be subject to the same jurisdiction.

After hearing, the Emergency Arbitrator held that the transactions agreed in the two purchase contracts were the sale and purchase of a second-hand lithography machine, respectively, and both second-hand lithography machines needed to be

shipped from Europe to China; the services agreed in the two purchase orders were the "deinstallation, bracket installation, rigging, crating and logistic" of the second-hand lithography machines under the two purchase contracts. The services under the purchase orders were indeed generated from the purchase contracts, and constituted the necessary steps for completing the transactions under the Purchase Contracts. Therefore, the Purchase Contracts and the Purchase Orders have a principal-subordinate contractual relationship, and from the evidence submitted by the Claimant so far, since the Purchase Orders do not provide for dispute resolution method, the arbitration agreement in the Purchase Contracts should be expanded to apply to the Purchase Orders.

Moreover, since the disputes under the Purchase Contracts and the Purchase Orders arose out of the same transaction and there were no conflicting dispute resolution clauses under the Purchase Contracts and the Purchase Orders, the disputes under the Purchase Contracts and the Purchase Orders met the conditions for multi-contract arbitration under Article 14 of the *Arbitration Rules*.

In sum, based on the existing evidence, the Emergency Arbitrator had jurisdiction over all requests of the Claimant for emergency relief based on the Purchase Contract and the Purchase Order.

(III) Conditions for the Emergency Arbitrator to grant emergency interim measures

The Emergency Arbitrator noted that Article 23, Paragraph (2) of the *Arbitration Rules* provides that the emergency arbitrator may decide to order or award necessary or appropriate emergency measures; Article 6, Paragraph (1) of the *Rules of Emergency Arbitrator Procedures* provides that the emergency arbitrator has the power to make a decision to order or award necessary emergency relief, and Paragraph (5) further provides that the emergency arbitrator may decide to dismiss the application of the Applicant and terminate the emergency arbitrator proceedings, if that arbitrator considers that circumstances exist where emergency measures are unnecessary or unable to be taken for various reasons. That is, under the *Arbitration Rules* and the *Rules of Emergency Arbitrator Procedures*, the main conditions for the Emergency Arbitrator to grant emergency interim measures are "urgency" and "necessity".

The criteria of "urgency" and "necessity" are not further defined in the *Arbitration Rules* and the *Rules of Emergency Arbitrator Procedures*. Drawing on domestic and international commercial arbitration practice, the Emergency Arbitrator held that when examining whether the Claimant's application for an emergency interim measure meets the criteria of "urgency" and "necessity", the following issues should be taken into account: (1) Whether the Claimant's arbitration claim has a reasonable possibility of success; (2) Whether the situation is urgent, and whether the failure to take emergency interim measures may cause irreparable damage to the Claimant, and whether such damage significantly exceeds the damage that may be caused to the Respondent by the

taking of emergency interim measures; (3) Whether the emergency interim measures requested by the Claimant are reasonable and enforceable.

In this case, the Claimant also expressed its views on the above three issues. Based on the provisions of the *Arbitration Rules* and the Claimant's opinions, the Emergency Arbitrator will analyze whether the emergency interim measures requested by the Claimant satisfy the conditions from these three aspects respectively.

(IV) Whether the Claimant's application meets the conditions for granting an emergency interim measure

1. Whether the Claimant's arbitration claims have a reasonable possibility of success

The Claimant made the following arbitration claims in the *Application for Arbitration*:

First, the Respondent shall return to the Claimant all payments made under the two purchase contracts and the two purchase orders, totaling $4,675,000 USD;

Second, the Respondent shall pay the Claimant liquidated damages of $691,500 USD for late delivery;

Thirdly, the Respondent shall pay $107,057.5 USD for the loss of fund occupation (calculated on the basis of $4,675,000 USD from January 18, 2024 to the time of actual payment of the requested amount, tentatively until September 3, 2024, according to the standard one-year loan prime rate ("LPR") announced by the National Interbank Funding Center authorized by the People's Bank of China);

Fourth, the Respondent shall bear the arbitration fee in this case;

Fifth, the Respondent shall bear the attorney fees, translation fees, travel expenses and other related costs incurred by the Claimant in connection with this case.

The Emergency Arbitrator noted that the Claimant requested to prohibit the Respondent from disposing of assets for a total amount of $5,366,500 USD, which was the sum of the amounts in the first and second arbitration claims above.

With regard to the first arbitration claim of the Claimant, based on the basic facts as identified by the Emergency Arbitrator, after the signing of the Purchase Contracts and the Purchase Orders by both parties, the Claimant paid the full price under the Purchase Contracts and the Purchase Orders amounting to $4,675,000 USD; one year and ten months have elapsed since the date of delivery as stipulated in the Purchase Contracts, but the Respondent has not been able to deliver the two second-hand lithography machines, and has failed to provide a reasonable explanation for its failure to deliver the products.

13

The Emergency Arbitrator held that, based on the existing evidence, the Claimant had fulfilled its payment obligations in accordance with the contract, but the Respondent failed to deliver the goods despite of repeated reminders from the Claimant, and the Respondent is very likely to commit a serious breach of contract in this case, giving the Claimant the right to request the Respondent to refund the payment of $4,675,000 USD already made by the Claimant in accordance with the applicable law. Therefore, the Claimant's first arbitration claim has a reasonable possibility of success.

With regard to the second arbitration claim of the Claimant, the Emergency Arbitrator noted that Article 12 of the Purchase Contract stipulates that if the Seller delays the delivery, the Seller shall pay 3% of the contract amount to the Buyer as liquidated damages for each week overdue (less than one week shall be calculated as one week). If the overdue period exceeds 21 days, the Seller shall pay 15% of the contract amount to the Buyer.

The Emergency Arbitrator held that the "termination fee" stipulated in Article 12 of the purchase contract could be understood as liquidated damages. Based on the above facts, the Respondent had been late in delivering the goods under the two purchase contracts for more than 21 days, meeting the conditions for paying liquidated damages of 15% of the price under the purchase contracts, i.e., 15% * the total price of the two purchase contracts ($4,610,000 USD) = $691,500 USD. Given that the autonomy of will of the parties to a contract is generally respected in international commercial arbitration, and that the percentage of liquidated damages agreed upon in the purchase contracts in question is not far beyond the reasonable scope as understood by the Emergency Arbitrator, there is a reasonable possibility that the Claimant's second arbitration claim is also upheld.

In conclusion, the Emergency Arbitrator held that the Claimant had provided prima facie evidence to prove that there is a reasonable possibility of success for the Claimant's first and second arbitration claims. Given that the amount of these two claims has already reached the limit of the Claimant's request to prohibit the Respondent from disposing of its assets, the Emergency Arbitrator does not need to analyze the possibility of success of the Claimant's other claims.

2. Whether the situation is urgent, and whether the failure to take emergency interim measures may cause irreparable damage to the Claimant, and whether such damage significantly exceeds the damage that may be caused to the Respondent by the taking of emergency interim measures;

(1) Whether the situation is urgent, and whether the failure to take emergency interim measures may cause irreparable damage to the Claimant

The Claimant argued that there is a high risk of transferring assets by the Respondent: Firstly, the Respondent has faced and is about to face a number of lawsuits in the United States and other jurisdictions, two of which contain circumstances similar to those in this case, i.e., the Respondent was late in

delivering the goods for a long time and refused to refund the money after receiving the transaction money. Therefore, the Respondent may be engaging in systematic fraudulent conduct; secondly, the main business of the Respondent is to earn spread income as a trader/agent, and its capital is highly liquid, so it may not have real estate or inconveniently transferable assets under its name, resulting in a higher risk of asset transfer; thirdly, as the Respondent is very likely to transfer its assets, the Respondent's financial and asset status is likely to deteriorate further if relief measures are not taken immediately. Even if the Claimant wins the subsequent arbitration, the award is very likely unable to be practically enforced and the Claimant will not be fully compensated.

The Emergency Arbitrator held that, according to the evidence submitted by the Claimant, one year and ten months after the expiration of the delivery period stipulated in the Purchase Contract, the Respondent still failed to deliver the equipment as agreed in the Contract, failed to provide a reasonable explanation for such failure, and refused to refund the price paid by the Respondent for the equipment. In addition, according to Claimant's Exhibit C-14, SGS filed a lawsuit against the Respondent in the Court of Texas, claiming that Respondent failed to deliver the contract equipment and refused to refund the price. According to Claimant's Exhibit C-13, several companies have filed lawsuits against the Respondent in the United States. Therefore, it is likely that the Respondent has committed several intentional breaches of contract against different counterparties. Considering that the business model of the Respondent is to earn spread income as a middleman, and its capital is highly liquid, the Emergency Arbitrator recognizes that the Respondent has a high probability of transferring its assets, and that the failure to take emergency measures to restrain the Respondent from disposing of its property may cause irreparable damage to the Claimant.

(2) Whether the damage to the Claimant in the absence of the emergency relief significantly exceeds the damage that may be caused to the Respondent by the taking of emergency interim measures

The Claimant argued that if the remedies requested by the Claimant are taken, the adverse consequences to the Respondent will be minimal. In addition, the Claimant has submitted a liability insurance for preservation of property issued by an insurance company to prevent any loss suffered by the Respondent as a result of the relief measures under this application. Therefore, the damages suffered by the Claimant in the absence of the relief measures will far exceed any consequences that the Respondent might suffer if the relief measures are taken.

The Emergency Arbitrator held that the emergency relief measure requested by the Claimant is to restrain the Respondent from disposing of its assets to the extent of the damages claimed by the Claimant ($5,366,500 USD), and that if the Claimant's request for relief is upheld, the damages to the Respondent are

that the Respondent's operations and cash flow may be affected to a certain extent. However, considering that the Respondent had already received $4,675,000 USD from the Claimant for the equipment but had not fulfilled its obligation to deliver the equipment, the Emergency Arbitrator considered that the taking of emergency relief measures would not affect the Respondent unduly. In addition, the Claimant had submitted a liability insurance issued by an insurance company to effectively guarantee that the Respondent would be compensated for any losses it might suffer as a result of the relief measures.

In summary, the Emergency Arbitrator held that the damages to the Claimant in the absence of emergency relief measures would significantly exceed the damages that might be caused to the Respondent if the emergency interim measures are taken.

3. Whether the emergency interim measures requested by the Claimant are reasonable and enforceable

The Claimant's request for an emergency interim measure, i.e., restraining the Respondent from disposing of property, is a common interim measure in arbitration. In terms of the amount, the Claimant requested to restrain the Respondent from disposing of property in a total amount "not exceeding the aggregate damages of $5,366,500 USD", which was equal to the sum of the first and second claims proposed by the Claimant in the arbitration procedure. Therefore, The Emergency Arbitrator held that the measure type and amount requested by the Claimant were reasonable.

The enforceability of the interim measure is analyzed from two aspects: first, the interim measure is binding and should be observed and performed. Second, the decision on the interim measure itself is not unenforceable. Article 9 of the *Arbitration Rules* provides that: "Arbitration participants shall proceed with the arbitration in good faith." Article 23, Paragraph (2) provides that: "In accordance with the applicable law or the agreement of the parties, a party may apply to the Arbitration Court for emergency relief pursuant to the CIETAC Emergency Arbitrator Procedures (Appendix III). The emergency arbitrator may decide to order or award necessary or appropriate emergency measures. The decision of the emergency arbitrator shall be binding upon both parties." According to the foregoing, the Respondent shall comply with the Emergency Arbitrator's Decision. Moreover, the relief requested by the Claimant is essentially to refrain the Respondent to from transferring a certain amount of property, which is not per se unenforceable if upheld. Therefore, the Respondent shall comply with and fulfill the decision of the Emergency Arbitrator.

Based on the foregoing analysis, the emergency interim measures requested by the Claimant are reasonable and enforceable.

### III. Decision

Based on the above facts and reasons, the Emergency Arbitrator makes the

following decision:

(I) The Respondent is restrained from directly or indirectly, by any means whatsoever, selling, removing, dissipating, alienating, transferring, assigning, changing ownership, encumbering, or other similarly dealing with assets of the Respondent. The total amount of such assets shall not exceed the amount of damages, i.e. $5,366,500 USD. Such assets shall be in the form of, but not limited to:

(1) Assets owned, controlled, possessed, held for the benefit of, accessible to, or belonging to Respondent, in whole or in part;

(2) Assets in the Respondent's actual or constructive possession;

(3) Assets in the actual or constructive possession of, directly or indirectly, or owned, controlled, held by, accessible to, or belonging to, another corporation, partnership, trust, or any other entity, including, but not limited to, those in an account at any bank or savings and loan institution, or held by any credit card processing agent, customer service agent, commercial mail receiving agent, or mail depository/forwarding company, credit cooperative, retirement fund custodian, monetary market or mutual fund, savings company, trustee, broker-dealer, escrow agent, title company, commodity trading company, precious metals dealer, or financial institution or depository institution of any kind or held for the benefit of the Respondent.

(II) The cost of this Emergency Arbitrator Procedure is RMB 30,000, which shall be borne by the Respondent. The foregoing cost has been fully prepaid by the Claimant, and the Respondent shall pay RMB 30,000 to the Claimant to compensate the Claimant for the procedural cost advanced by the Claimant.

This decision is binding upon both parties and shall take effect from the date it is made, unless the circumstances set forth in Article 6 Paragraph (6) of the *Rules of Emergency Arbitrator Procedures*, Appendix III to the *Arbitration Rules*, arise.

(No text below)



(No text on this page)

Emergency Arbitrator: (Mr. SUN Wei's signature)

China International Economic and Trade Arbitration Commission

Arbitration Court (Seal)

Shanghai, October 24, 2024



# 中国国际经济贸易仲裁委员会

# 紧急仲裁员决定

申　请　人：上海探跃半导体设备有限公司

法定代表人：李华

地　　　址：中国上海市浦东新区宣桥镇宣秋路 210 号

　　　　　　E 幢 1 楼北侧 101 室

代　理　人：白晶、张旻、霍姣蓉 北京市中闻律师事务所

　　　　　　高旻 上海探跃半导体设备有限公司

被 申 请 人：Capital Asset Exchange and Trading, LLC

地　址　一：5201 Great America Parkway, Suite 320,

　　　　　　Santa Clara, CA, USA

地　址　二：5201 Great America Parkway, Suite 272,

　　　　　　Santa Clara, CA, USA

地　址　三：7500 Rialto Boulevard, Suite 250 - #2778,

　　　　　　Austin, TX, USA

地　址　四：Frost Bank Tower, 401 Congress Ave, Ste 1760,

　　　　　　Austin, TX, USA

上　海

二〇二四年十月二十四日

# 紧急仲裁员决定

（2024）中国贸仲沪字第 018823 号

2024 年 8 月 30 日，申请人上海探跃半导体设备有限公司（以下简称"申请人"）根据其与被申请人 Capital Asset Exchange and Trading, LLC（以下简称"被申请人"）签订的合同编号分别为 TYEP2022081101 和 TYEP2022082201 的两份《合同》中仲裁条款的约定，以及自 2024 年 1 月 1 日起施行的《中国国际经济贸易仲裁委员会仲裁规则》（以下简称"《仲裁规则》"）附件三《中国国际经济贸易仲裁委员会紧急仲裁员程序》（以下简称"《紧急仲裁员程序规则》"）提交"紧急仲裁程序申请书"及其附件。

2024 年 9 月 5 日，申请人根据上述仲裁条款的约定向中国国际经济贸易仲裁委员会（以下简称"仲裁委员会"）上海分会提交书面仲裁申请。

仲裁委员会在申请人办理了相关手续后，受理了上述合同项下的争议仲裁案。案件编号为 SHG20240681。

仲裁委员会上海分会仲裁院（以下简称"仲裁院"）根据《紧急仲裁员程序规则》，经初步审查，决定适用紧急仲裁员程序，并确定以中文作为本程序语言。在申请人预付紧急仲裁员程序费用后，仲裁委员会仲裁院院长于 2024 年 10 月 9 日指定孙巍先生担任紧急仲裁员。

仲裁院于 2024 年 10 月 9 日同时以电子邮件及特快专递方式分别向申请人和被申请人发送了仲裁通知、紧急仲裁员

程序受理通知、紧急仲裁员签署的接受指定声明书、《仲裁规则》和仲裁委员会《仲裁员名册》（前述文件均为中英文），同时向被申请人寄送了申请人提交的仲裁申请书及其附件、"紧急仲裁程序申请书"及其附件等。

以电子邮件方式向被申请人发送的前述函件均成功投递至申请人提供的被申请人联系邮箱【info@caeonline.com（两份《合同》首页所载被申请人电子邮箱）；agill@caeonline.com；candace.chen@caeonline.com；estone@caeonline.com；ahung@caeonline.com；shuang@caeonline.com；achoo@caeonline.com；wchang@caeonline.com；jsantos@caeonline.com；llu@caeonline.com，以下合称"被申请人电子邮箱"】；以特快专递方式寄送被申请人的地址分别为本决定封面所载被申请人四个地址，其中地址一为申请人提供的被申请人在其官网以及市政网站上对外公示地址，地址二为两份《合同》首页所载被申请人地址，地址三和地址四为申请人提供的被申请人其他经营或联络地址。除寄送地址四的函件因快递公司反馈"收件人已经搬离运单收件地址"而被退回外，向其他地址寄送的函件均于 2024 年 10 月 14 日妥投。

2024 年 10 月 10 日，紧急仲裁员通过电子邮件方式向双方发送紧急仲裁员程序事项安排及程序时间表（中英双语），就包括但不限于如下程序事项作出安排：明确紧急仲裁员程序中的文件提交和通知送达优先通过电子邮件方式进行；确定 2024 年 10 月 20 日以线上方式举行紧急仲裁员程序开庭并附庭审会议链接；规定了双方提交材料的相关期限。程序事项安排亦明确："考虑到本程序的紧迫性以及为保证程序高效进行，当事人可以选择以中文或者英文提交本案书面意

见与证据材料、进行通讯。当事人提交的中文或英文文件无需提供翻译，提交的中文、英文以外的语言的材料需提供中文或英文翻译。本程序开庭语言为中文。如当事人需要，紧急仲裁员可聘请庭审译员，翻译费用由提出申请的一方当事人承担。"前述紧急仲裁员程序事项安排及程序时间表（中英双语）成功投递至被申请人电子邮箱。

2024 年 10 月 20 日，紧急仲裁员程序线上开庭如期举行，申请人法定代表人及委派的代理人出席，被申请人经有效通知未派员出席，亦未说明理由。庭审中，申请人陈述了紧急性临时救济请求及所依据的事实和理由，对证据进行了说明，并回答了紧急仲裁员的调查询问。

庭审后，申请人提交两份"关于紧急仲裁程序中请求事项的澄清"，对其"紧急仲裁程序申请书"第一项请求"冻结被申请人名下的资产"进行澄清，并撤回"紧急仲裁程序申请书"中的第二项、第三项请求（"命令被申请人在紧急仲裁员裁决之日起 3 日内，全面披露其截至紧急仲裁员裁决当日准确的财务报表，包括但不限于被申请人在美国境内外持有的资产"和"命令被申请人在紧急仲裁员裁决之日起 3 日内，全面披露与采购合同项下货物相关的信息，包括但不限于货物的位置和状态"）。申请人发送的前述文件均同时抄送被申请人电子邮箱。

2024 年 10 月 24 日，申请人就其申请的紧急性临时救济提交担保函。

本案紧急仲裁员程序中的所有文件均已按照《仲裁规则》第八条的规定有效送达了双方当事人。

紧急仲裁员现已审查完毕本案紧急性临时救济申请。根据《仲裁规则》第二十三条第（二）款和附件三《紧急仲裁员程序规则》的规定，紧急仲裁员作出本决定。

现将紧急性临时救济申请及抗辩、紧急仲裁员意见以及决定分述如下：

## 一、紧急性临时救济申请及抗辩

### （一）申请人的紧急性临时救济申请及其主要理由

根据申请人落款日期为 2024 年 8 月 26 日的"紧急仲裁程序申请书"及落款日期分别为 2024 年 10 月 20 日、10 月 21 日的"关于紧急仲裁员程序申请求事项的澄清"，申请人在本案中申请的紧急性临时救济措施如下：

禁止被申请人无论以何种方式直接或间接地出售、转移、处分、转让、分配、变更权属、设置抵押或以其他类似方式处置其名下资产。该等资产金额总计不超过损害赔偿金额 5,366,500 美元（以下简称"损害赔偿金额"）。该等资产的形式包括但不限于：

（1）被申请人全部或部分拥有、控制、持有，为其利益所持有、可由其获取或属于其的资产；

（2）被申请人实际占有或推定占有的资产；

（3）直接或间接地由其他公司、合伙企业、信托或任何其他实体实际或推定占有，或由其拥有、控制、持有、可由其获取或属于其的资产，包括但不限于任何银行或储蓄贷款

机构账户中，或任何信用卡处理代理、客户服务代理、商业邮件接收代理或邮件保管/转发公司、信用合作社、退休基金托管人、货币市场或共同基金、存储公司、受托人、经纪自营商、托管代理、产权公司、商品交易公司、贵金属经销商或任何类型的金融机构或存托机构所持有或为被申请人持有的资产。

申请人申请上述紧急性临时救济措施的具体理由主要如下：

1. 申请人有权向仲裁委员会申请紧急性临时救济措施

申请人与被申请人分别于 2022 年 8 月 12 日和 2022 年 8 月 22 日签订两份采购二手光刻机设备的《合同》（合同编号分别为：TYEP2022081101 和 TYEP2022082201），两份合同的第 13 条均约定："法律适用：凡有关本合同或执行本合同而发生的一切争执，应通过友好协商解决，如不能解决，则应申请中国国际经济贸易仲裁委员会上海分会仲裁。仲裁费用由败诉一方负担。"因此，仲裁委员会对两份《合同》项下的争议事项有管辖权。

此外，为了保证两份《合同》的履行，申请人与被申请人于 2022 年 10 月 19 日签署了两份采购订单（编号分别为 PO 25239 和 PO 25268），分别对两份《合同》项下所购买设备的额外处理费用的支付问题（涉及设备的拆机、固定、包装、仓储等费用）进行了补充约定。两份采购订单在"规格"部分分别明确载明了两份《合同》的编号，明确采购订单系以《合同》为基础的设备处置服务。两份采购订单不含争议解决条款。

《仲裁规则》第十四条第（一）款规定："（一）申请人就多个合同项下的争议可在单个仲裁案件中合并提出仲裁申请，但应同时符合下列条件：1.多个合同系主从合同关系，或多个合同所涉当事人相同且法律关系性质相同，或多个合同所涉标的具有牵连关系；2.多个合同所涉争议源于同一交易或同一系列交易；3.多个合同中的仲裁协议内容相同或相容。"鉴于两份采购订单明确载明相关服务为两份《合同》中约定的设备的处理服务，且采购订单项下的服务及费用支付是基于《合同》的履行产生的，双方对采购订单的履行必须以《合同》的履行为前提，因此采购订单本质上属于对两份《合同》的补充，《合同》和采购订单具有主从关系，采购订单的履行属于《合同》的范畴，应当归属同一管辖。因此，采购订单下的争议事项也应按照两份《合同》第13条的约定由仲裁委员会管辖。

根据《仲裁规则》附件三《紧急仲裁员程序规则》第一条的规定，当事人需要紧急性临时救济的，可以依据所适用的法律或双方当事人的约定申请紧急仲裁员程序。因此，申请人有权就两份《合同》及两份采购订单下的争议向仲裁委员会申请紧急性临时救济措施。

2. 被申请人有转移财产的风险，本申请具有紧迫性

首先，被申请人在美国及其他司法管辖区已经并即将面临多起诉讼案件，包括 Semiconductor Global Solutions 公司对被申请人在美国德克萨斯州联邦法院提起的诉讼。在 2024 年申请人在美国被诉的三个案件中，两个案件中都包含跟本案较为类似的情况。根据申请人了解，被申请人习惯于以较为简单的程序与交易相对方签订合同，导致其所面临的大部

分案件的诉讼位于美国。与此同时，由于两份案涉《合同》中的争议解决条款约定了仲裁，申请人无法直接向被申请人财产所在地的法院申请冻结令或提起诉讼。

其次，被申请人的主要业务是作为交易商/代理商赚取价差收益，公司的资金流动性较强，名下可能不具备不动产或不方便转移的资产，因此资产转移的风险较大。

再次，被申请人的涉诉情况及申请人了解到的其他信息表明被申请人的财务及信用状况存在恶化风险，被申请人可能存在系统性欺诈行为。除上述美国法院涉诉情况外，目前已有多起因被申请人不履行合同义务产生的同类案件，多家中国大陆公司以及一些中国台湾、韩国、新加坡的公司也在向被申请人付款后遇到了与本案类似的情况。在申请人与被申请人的沟通中，被申请人也出现了恶意隐瞒行为。因此，被申请人违约行为高度可疑，可能存在欺诈行为，也有较高资产转移风险。与此同时，被申请人目前仍然处于表面上正常经营的状态，可能还在持续进行交易，有较高可能性获得资金进账。

3. 申请人面临无法通过仲裁裁决充分弥补其所遭受损失的风险

由于被申请人极有可能转移其资产，如果不立即采取救济措施，被申请人的财务资产状况很有可能进一步恶化。即使申请人在后续仲裁中获得胜诉裁决，该裁决也有很大可能性无法实际执行，申请人无法得到充分补偿。

4. 如果不予以救济，申请人所遭受的损害将远超过被申请人可能承担的后果

由于被申请人未如实报告案涉货物的状况，且被申请人存在高度的资产转移风险，申请人面临严重且无法弥补的损失。另一方面，如果采取申请人请求的救济措施，对被申请人造成的不利后果微乎其微。此外，申请人可以提交由保险公司出具的保函，以预防被申请人因本申请项下的救济措施而遭受任何损失。因此，申请人所遭受的损害（如果不采取救济措施）将远远超过被申请人可能承担的任何后果（如果采取救济措施）。

5. 申请人在仲裁案件中具有较高的胜诉可能性

本案涉及事实情况非常清楚：申请人已经支付了采购合同的全部价款；被申请人未能按照采购合同交付任何货物；并且被申请人占有了合同款项且拒绝退款。因此，申请人已初步确立其索赔的实质依据。

6. 申请人申请的临时救济措施，如紧急仲裁员作出支持决定，具有可执行性。

被申请人注册地位于美国加利福尼亚州，总部位于美国德克萨斯州，在两地均有住所地。因此，本案的申请执行地主要为美国的加利福尼亚州和德克萨斯州。

在美国联邦层面，美国是《纽约公约》缔约国，出台了保证国际仲裁裁决执行的一系列法律法规。本案将出具的紧急救济裁决不违背公约和相关法律，可在美国得到承认与执行。

在州立法层面，《德克萨斯州民事诉讼与救济法典》第172.175条"临时命令"规定，仲裁一方可以请求法院执行仲裁庭授予的临时保护措施命令。《加利福尼亚州民事诉讼法》第

1281.8 条"与仲裁争议相关的临时救济申请"规定，法院可以在仲裁前或仲裁期间应当事人要求发出包括资产扣押令、初步禁令在内的临时保护措施。

在判例层面，美国判例法支持，保护性的紧急措施（例如临时措施）在其执行目的上具有最终性和执行效力，也有先例确认，在美国司法体系中，紧急仲裁员的紧急救济裁决可以被认定为与仲裁庭就案件本身所出具的裁决具有相同的可执行性。

美国法院曾多次承认与执行仲裁委员会作出的裁决。

综上，美国的联邦法律、《纽约公约》、各州法律均为本案紧急仲裁员决定的执行提供了法律基础。尤其值得注意的是，本案在德克萨斯州申请执行时可以参考德州法律中关于"临时命令"的规定。从终局性的角度考虑，紧急仲裁员作出的裁决决定比临时措施（临时命令）更具有终局性，在德克萨斯州是可以被执行的。

（二）被申请人答辩

被申请人在本程序中未提交任何书面材料，且缺席庭审。

## 二、　紧急仲裁员意见

紧急仲裁员经全面审阅申请人提交的书面材料，充分听取申请人在庭审中的意见，对申请人的紧急性临时救济申请作如下评述：

（一）案件基本事实

本紧急仲裁员就案件所作分析与理解对嗣后仲裁庭认定案件事实不产生任何约束力。根据申请人目前提交的证据和陈述，本紧急仲裁员理解与本案争议有关的交易及纠纷背景如下：

2022 年 8 月 12 日，申请人与被申请人签订编号为TYEP2022081101 的《合同》，约定申请人向被申请人购买规格为 NIKON NSR-2205i12D 的二手光刻机设备一台，合同总价为 2,250,000 美元（以下简称"合同一"）。合同一约定的成交价格术语为 Exworks（工厂交货），交货期为 2022 年 9 月 1 日之前，交货地点为德国。根据合同一第 7 条，申请人应于 8 月 15 日之前支付合同价款的 30%，9 月 1 日之前支付合同价款的 70%。合同一第 12 条进一步约定："除本合同第 9 条不可抗力影响外，如卖方逾期交货的，每逾期一周（不足一周的按一周计算），卖方应按合同金额 3%向买方支付违约金。逾期超过 21 天的，卖方应向买方支付合同金额 15%的解约金。同时买方有权解除合同，由此造成的相关损失亦由卖方承担。"

2022 年 8 月 22 日，申请人与被申请人签订编号为TYEP2022082201 的《合同》，约定申请人向被申请人购买规格为 NIKON NSR-2205i12D 的二手光刻机设备一台，合同总价为 2,360,000 美元（以下简称"合同二"，与合同一合称"采购合同"）。合同二约定的成交价格术语为 Exworks（工厂交货），交货期为 2022 年 12 月 31 日之前，交货地点为欧洲。根据合同二第 7 条，申请人应于 8 月 25 日之前支付合同价款的 30%，设备放行前两周（预计 12 月 31 日前）支付合同

价款的 70%。合同二第 12 条与合同一第 12 条的约定相同。

就合同一的价款，申请人于 2022 年 8 月 15 日向被申请人支付了 675,000 美元，于 2022 年 9 月 2 日支付了 1,000,000 美元，于 2022 年 9 月 9 日支付了剩余 575,000 美元。就合同二的价款，申请人于 2022 年 8 月 25 日向被申请人支付了 708,000 美元，于 2022 年 9 月 9 日支付了 425,000 美元，于 2022 年 9 月 19 日支付了 700,000 美元，于 2022 年 9 月 26 日支付了剩余 527,000 美元。截至 2022 年 9 月 26 日，申请人已全额支付采购合同项下的价款共计 4,610,000 美元。

2022 年 9 月 8 日，被申请人员工 Erik Stone 向申请人发送邮件，告知二手光刻机采购涉及的后勤总成本及拆机工作的时间安排："今早我们收到了一份 38,000 美元的拆机报价，其中包括使用你们的支架。总的来说，包括拆机、支架安装、吊装和测量在内，后勤总成本为 65,000 美元（或每套系统 32,500 美元）。拆机工作将于 9/19 周开始，Daotone 可能会在 9/30 或下周初取走这些系统。"9 月 12 日，被申请人向申请人发送 25239 号和 25268 号发票，金额各为 32,500 美元。

2022 年 10 月 22 日，申请人与被申请人签署 25239 号和 25268 号采购订单，采购事项分别为"为合同号：TYEP2022081101 的半导体工具拆机、固定、包装、仓储费用"和"为合同号：TYEP2022082201 的半导体工具拆机、固定、包装、仓储费用"。两份采购订单金额各为 32,500 美元。

就两份采购订单项下款项的支付，申请人于 2022 年 11 月 4 日向被申请人支付了 32,500 美元，于 2022 年 11 月 7 日通过道同供应链（上海）有限公司向被申请人支付了另外

32,500 美元。

其后，被申请人未能在采购合同约定的交货期内交货。

2023 年开始，申请人多次通过邮件催促被申请人交货，表达对被申请人迟延交货情况的严重担忧，并多次要求被申请人提供交货的最新进展和时间预期。2023 年 2 月 3 日，被申请人对迟延回复表示歉意，表示其仍在向德国联邦出口管制局（BAFA）提交申请，且德国海关可能会需要对货物进行检验。2023 年 3 月 16 日，被申请人表示其仍然在等待 BAFA 的审批。

2024 年 1 月 18 日，申请人再次通过邮件要求被申请人向其提供交货的时间预期，并询问 BAFA 的审批进展。申请人还表示，如果被申请人无法交货，则应尽快向申请人退款；如短期内不能交货，则申请人需要去仓库检查设备。2024 年 1 月 23 日，被申请人回复表示，由于欠缺合规方面的批准，其无法完成出口或提供交货时间，也不能允许申请人检查设备。对于申请人的退款诉求，被申请人表示将与其法律顾问沟通。

被申请人至今仍未向申请人交货，且自 2024 年 5 月 13 日起未再回复任何沟通邮件。

此外，被申请人于 2024 年分别被 Semiconductor Global Solutions（以下简称"SGS 公司"）、Epicrew USA 和 Cubit Pte Ltd. 三家公司在美国法院提起合同违约之诉。SGS 公司向美国德克萨斯州联邦法院提交的起诉书称："CAE（被申请人的简称，紧急仲裁员注）向 SGS 承诺其可以提前交付设备；并基于这一虚假借口从 SGS 获取了 2,000,000 美元；在拖延 SGS

超过一年后拒绝交付设备或退还 SGS 的采购款。"

（二）紧急仲裁员的管辖权

《仲裁规则》第八十条第（二）款规定："在仲裁庭组成之前，当事人可以按照《中国国际经济贸易仲裁委员会紧急仲裁员程序》（本规则附件三）申请紧急性临时救济。"《仲裁规则》附件三第一条第（一）款规定："当事人需要紧急性临时救济的，可以依据所适用的法律或双方当事人的约定申请紧急仲裁员程序。"据此，对于仲裁委员会管辖的争议，当事人可以在仲裁庭组成前申请紧急性临时救济。

本案中，申请人的紧急性临时救济措施申请涉及两份采购合同和两份采购订单项下的争议。在提交"紧急仲裁程序申请书"之后，申请人亦就两份采购合同和两份采购订单项下的争议向仲裁委员会提交了仲裁申请，且仲裁案件已得到仲裁委员会的受理。目前，仲裁庭尚未组成。

有鉴于此，判断紧急仲裁员对本案管辖权的核心问题在于双方当事人是否对两份采购合同和两份采购订单项下的争议有仲裁合意。

本案中，申请人所依据的仲裁条款为两份采购合同的第 13 条。该条约定："法律适用：凡有关本合同或执行本合同而发生的一切争执，应通过友好协商解决，如不能解决，则应申请中国国际经济贸易仲裁委员会上海分会仲裁。仲裁费用由败诉一方负担。"据此，紧急仲裁员显然对采购合同争议引发的紧急性临时救济请求有管辖权。

两份采购订单本身并无仲裁条款。申请人主张，两份采购订单明确载明相关服务为两份采购合同中约定的设备的

13

处理服务，且采购订单项下的服务及费用支付是基于采购合同的履行产生的，双方对采购订单的履行必须以采购合同的履行为前提，因此采购订单本质上属于对两份采购合同的补充，采购合同和采购订单具有主从关系，采购订单的履行属于采购合同的范畴，应当归属同一管辖。

紧急仲裁员经审理认为，两份采购合同约定的交易事项分别为一台二手光刻机的买卖，两台二手光刻机均需要从欧洲运至中国；而两份采购订单约定的服务分别为两份采购合同下的二手光刻机的"拆机、固定、包装、仓储"。采购订单下的服务确实是基于采购合同而产生的，并构成完成采购合同下交易的必要步骤。因此，采购合同与采购订单具有主从合同关系，从申请人目前提交的证据上看，由于采购订单中未约定争议解决方式，采购合同中约定的仲裁协议应扩张适用至采购订单。

另外，由于采购合同与采购订单所涉争议源于同一交易，且采购合同与采购订单下并不存在冲突的争议解决条款，采购合同与采购订单下的争议符合《仲裁规则》第十四条关于多合同仲裁的条件。

综上，根据目前的证据情况，紧急仲裁员对申请人基于采购合同与采购订单的全部紧急性临时救济请求有管辖权。

（三）紧急仲裁员准许紧急性临时措施的条件

紧急仲裁员注意到，《仲裁规则》第二十三条第（二）款规定紧急仲裁员可以决定采取"必要或适当的"紧急性临时救济措施；《紧急仲裁员程序规则》第六条第（一）款规定，紧急仲裁员有权作出"必要的"紧急性临时救济的决定，第

（五）款进一步规定，紧急仲裁员驳回申请的理由为"不必采取"或"无法采取"紧急性临时救济措施。即，在《仲裁规则》与《紧急仲裁员程序规则》项下，紧急仲裁员准许紧急性临时措施的主要条件是"紧急性"与"必要性"。

《仲裁规则》与《紧急仲裁员程序规则》未进一步界定"紧急性"与"必要性"的判断标准。借鉴国内和国际商事仲裁实务，紧急仲裁员认为在审查申请人提出的紧急性临时措施申请是否符合"紧急性"与"必要性"时，应着重考虑以下问题：（1）申请人之仲裁请求是否有合理的胜诉可能；（2）情况是否紧迫，若不采取紧急性临时措施是否可能对申请人造成难以弥补的损害，且该损害是否显著超出采取紧急性临时措施可能给被申请人带来的损害；（3）申请人请求采取的紧急性临时措施是否具有合理性和可执行性。

本案中申请人亦围绕以上三个问题发表意见。综合《仲裁规则》规定及申请人意见，以下紧急仲裁员将分别从这三个方面，就申请人申请的紧急性临时措施是否满足条件作出分析。

（四）申请人的申请是否满足准许紧急性临时措施的条件

1. 申请人之仲裁请求是否有合理的胜诉可能

申请人在《仲裁申请书》中提出如下仲裁请求：

第一，被申请人向申请人返还所支付的两份采购合同以及两份采购订单项下的全部款项，共计 4,675,000 美元；

第二，被申请人向申请人支付逾期交货违约金 691,500

美元；

第三，被申请人支付资金占用损失 107,057.5 美元（以 4,675,000 美元为基数，自 2024 年 1 月 18 日起至实际付清请求一款项时止，按照中国人民银行授权全国银行间同业拆借中心公布的一年期贷款市场报价利率（LPR）标准计算，暂计算至 2024 年 9 月 3 日）；

第四，被申请人承担本案仲裁费；

第五，被申请人承担申请人因本案产生的律师费、翻译费、差旅费等相关费用。

紧急仲裁员注意到，申请人请求禁止被申请人处置的资产限额为 5,366,500 美元，即申请人上述第一项和第二项仲裁请求金额之和。

关于申请人的第一项仲裁请求，基于紧急仲裁员认定的基本事实，双方签署采购合同和采购订单后，申请人按约定支付了采购合同和采购订单下的全部价款共计 4,675,000 美元；采购合同约定的交货期至今已满一年十个月，但被申请人始终未能交付两台二手光刻机，且未能对未交货的情况提供合理解释。

紧急仲裁员认为，基于现有的证据情况，申请人按照合同约定履行了付款义务，但被申请人逾期交货，且经申请人多次催告仍未履行，被申请人在本案中有较大可能构成严重的违约行为，从而使得申请人有权根据所适用的法律要求被申请人返还申请人所支付的价款 4,675,000 美元。因此，申请人的第一项仲裁请求有合理的胜诉可能。

关于申请人的第二项仲裁请求，紧急仲裁员注意到采购合同第 12 条约定，卖方逾期交货的，每逾期一周（不足一周的按一周计算）应按合同金额 3%向买方支付违约金；卖方逾期交货超过 21 天的，卖方应向买方支付合同金额 15%的解约金。

紧急仲裁员认为，采购合同第 12 条约定的"解约金"可以理解为违约金。基于前述认定的事实，被申请人在两份采购合同下逾期交货的时间均已远超 21 天，已满足上述合同约定中支付采购合同价款 15%的违约金，也即两份采购合同总价款 4,610,000 美元的 15%——691,500 美元的条件。鉴于国际商事仲裁中普遍尊重合同当事人的意思自治，案涉采购合同约定的违约金比例也不明显超出紧急仲裁员理解的合理范畴，因此，申请人的第二项仲裁请求亦有得到支持的合理可能。

综上，紧急仲裁员认为对于申请人的第一项和第二项仲裁请求，申请人已经提供初步证据证明其有合理的胜诉可能。鉴于该两项仲裁请求金额已达到申请人请求禁止被申请人处置资产的限额，紧急仲裁员无需再分析申请人其他仲裁请求的胜诉可能性问题。

2. 情况是否紧迫，若不采取紧急性临时措施是否可能对申请人造成难以弥补的损害，且该损害是否显著超出采取紧急性临时措施可能给被申请人带来的损害

（1）情况是否紧迫，若不采取紧急性临时措施是否可能对申请人造成难以弥补的损害

申请人主张，被申请人存在较高的转移资产的风险：第

一，被申请人在美国及其他司法管辖区已经并即将面临多起诉讼案件，其中两个案件中都包含跟本案较为类似的情况，即被申请人收取交易价款之后，长期迟延交付货物，亦拒不退还收取的款项，因此，被申请人可能存在系统性欺诈行为；第二，被申请人的主要业务是作为交易商/代理商赚取价差收益，公司流动性较强，名下可能不具备不动产或不方便转移的资产，因此资产转移的风险较大；第三，由于被申请人极有可能转移其资产，如果不立即采取救济措施，被申请人的财务资产状况很有可能进一步恶化。即使申请人在后续仲裁中获得胜诉裁决，该裁决也有很大可能性无法实际执行，申请人无法得到充分补偿。

紧急仲裁员认为，根据申请人提交的证据，在采购合同约定的交货期届满后一年十个月，被申请人始终未能交付合同约定的设备，亦未能提供合理解释，并且拒不退还被申请人支付的设备价款。另外，根据申请人证据 C-14，SGS 公司在德克萨斯州法院针对被申请人提起诉讼，亦主张被申请人存在不交付合同约定设备、不退款的行为。根据申请人证据 C-13，已有多家公司在美国针对被申请人提起诉讼。据此，被申请人很可能存在针对不同交易对手的多次故意违约行为。另考虑到被申请人的经营模式主要为作为中间商赚取差价、资金流动性强，紧急仲裁员认可，被申请人存在较高的转移资产的可能性，并且如果不采取紧急性救济措施限制被申请人处置财产，可能对申请人造成难以弥补的损害。

（2）若不采取紧急性救济措施，对申请人造成的损害是否显著超出如果采取紧急性临时措施，可能给被申请人带来的损害

申请人主张，如果采取申请人请求的救济措施，对被申请人造成的不利后果微乎其微。此外，申请人已提交由保险公司出具的保函，以预防被申请人因本申请项下的救济措施而可能遭受的任何损失。因此，如果不采取救济措施，申请人所遭受的损害将远远超过如果采取救济措施，被申请人可能承担的任何后果。

紧急仲裁员认为，申请人请求的紧急性救济措施为，在申请人主张的损害赔偿金额 5,366,500 美元范围内，限制被申请人处置资产，若支持申请人的救济请求，给被申请人造成的损害是被申请人的经营情况、现金流可能会受到一定影响。但考虑到被申请人已收到申请人支付的 4,675,000 美元设备价款而未履行交付设备的义务，紧急仲裁员认为采取紧急性救济措施，不会对被申请人产生过大的影响。另外，申请人已提交由保险公司出具的保函，可有效保障被申请人因救济措施可能遭受的任何损失得到补偿。

综上，紧急仲裁员认为，若不采取紧急性救济措施，对申请人造成的损害将显著超出如果采取紧急性临时措施，可能给被申请人带来的损害。

3. 申请人请求采取的紧急性临时措施是否具有合理性和可执行性

申请人提出的紧急性临时措施请求，即限制被申请人处置财产，是仲裁中一种常见的临时措施。在金额方面，申请人请求限制被申请人处置的财产总额为"总计不超过损害赔偿金额 5,366,500 美元"，该金额等于申请人在仲裁程序中提出的第一项与第二项仲裁请求金额之和。因此，紧急仲裁员

认为，申请人请求的措施类型和金额均具有合理性。

关于临时措施的可执行性。临时措施的可执行性从两方面分析：其一为临时措施具有约束力，应予遵守和履行。其二为临时措施决定本身并非不可执行。《仲裁规则》第九条规定：“仲裁参与人应遵循诚实信用原则，进行仲裁程序。”第二十三条第（二）款规定：“根据所适用的法律或当事人的约定，当事人可以依据《中国国际经济贸易仲裁委员会紧急仲裁员程序》（本规则附件三）向仲裁委员会仲裁院申请紧急性临时救济。紧急仲裁员可以决定采取必要或适当的紧急性临时救济措施。紧急仲裁员决定对双方当事人具有约束力。”根据前述规定，被申请人应遵守紧急仲裁员决定。另外，申请人请求的救济本质上是要求被申请人不得转让一定金额的财产，如获支持，其本身并非不可执行。因此，被申请人应遵守并履行本紧急仲裁员的决定。

基于上述分析，申请人请求的紧急性临时措施具有合理性与可执行性。

三、决 定

依据上述事实和理由，紧急仲裁员作出如下决定：

（一）禁止被申请人无论以何种方式直接或间接地出售、转移、处分、转让、分配、变更权属、设置抵押或以其他类似方式处置其名下资产。该等资产金额总计不超过损害赔偿金额 5,366,500 美元。该等资产的形式包括但不限于：

（1）被申请人全部或部分拥有、控制、持有，为其利益所持有、可由其获取或属于其的资产；

（2）被申请人实际占有或推定占有的资产；

（3）直接或间接地由其他公司、合伙企业、信托或任何其他实体实际或推定占有，或由其拥有、控制、持有、可由其获取或属于其的资产，包括但不限于任何银行或储蓄贷款机构账户中，或任何信用卡处理代理、客户服务代理、商业邮件接收代理或邮件保管/转发公司、信用合作社、退休基金托管人、货币市场或共同基金、存储公司、受托人、经纪自营商、托管代理、产权公司、商品交易公司、贵金属经销商或任何类型的金融机构或存托机构所持有或为被申请人持有的资产。

（二）本紧急仲裁员程序费用为人民币 30,000 元，由被申请人承担。前述费用已全部由申请人预缴，被申请人应向申请人支付人民币 30,000 元，以补偿申请人垫付的程序费用。

本决定对双方当事人均具有约束力，自作出之日起生效。除非出现《仲裁规则》附件三《紧急仲裁员程序规则》第六条第（六）款规定的情形。

（以下无正文）

（此页无正文）

紧急仲裁员： 

二〇二四年十月二十四日于上海

# Exhibit C-2

[Entire Exhibit Proposed to be Filed
Under Seal]

**From:** 郭静雯 guojingwen@cietac.org 📎
**Subject:** Re: SHG20240681号案紧急仲裁员决定 (Decision of the Emergency Arbitrator-SHG20240681 Arbitration Case)
**Date:** October 24, 2024 at 8:17 AM
**To:** info@caeonline.com, agill@caeonline.com, candace.chen@caeonline.com, estone@caeonline.com, ahung@caeonline.com, shuang@caeonline.com, achoo@caeonline.com, wchang@caeonline.com, jsantos@caeonline.com, llu@caeonline.com, xiao.bai@zhongwenlaw.com, zhangmin@zhongwenlaw.com, huojiaorong@zhongwenlaw.com
**Cc:** 付智星 fuzhixing@cietac.org, sunwei sunwei@zhonglun.com

各位好，
Dear Sirs or Madams，

关于题述仲裁案，现向双方转去本案紧急仲裁员于2024年10月24日作出的（2024）中国贸仲沪字第018823号紧急仲裁员决定，请查收。
Concerning the captioned arbitration case, we hereby forward to both parties the 〔Ref.: (2024) CIETAC SH 018823〕
Decision made by the Emergency Arbitrator on 24 October 2024.


祝好！
All the best,
-----------------
**郭静雯 GUO Jingwen**

中国国际经济贸易仲裁委员会上海分会
China International Economic and Trade Arbitration Commission Shanghai Sub-Commission

电话Tel: 021-60137690

电邮Email: guojingwen@cietac.org

地址：中国上海市浦东新区世纪大道1198号世纪汇广场1座16楼

邮编：200122

Address: 16F, Century Link Tower 1, No.1198, Century Avenue, Pudong New Area, Shanghai, P.R. China.

Postcode: 200122

**SHG20240681号仲裁**
**案函寄紧急仲裁员决定...**

**SHG20240681号案紧**
**急仲裁员决定.pdf**
933 KB

# Exhibit C-3

[Entire Exhibit Proposed to be Filed

Under Seal]

DocuSign Envelope ID: A1F8EFA2-AF83-480C...0-FDDC543D0F5C

# CONTRACT
# 合 同

Contract No 合同编号: **TYEP2022081101**
Location 签订地点: 上海市浦东新区

**The Buyer:    Shanghai Tyron Semiconductor Equipment Co.,Ltd**
买方: 上海探跃半导体设备有限公司
**Address:No.101,1 Floor,Build E,No.210 Xuanqiu Road,Xuanqiao Town,Pudong New District,Shanghai**
地址: 上海市浦东新区宣桥镇宣秋路 210 号 E 幢 1 楼北侧 101 室
**Contactor: :Hua Li    联系人: 李华**
电话 Tel**: +86-021-20958760**
**Email 邮箱: hli@shtyron.com**

**The Seller:    Capital Asset Exchange and Trading, LLC**
卖方: **Capital Asset Exchange and Trading, LLC**
**Address: 5201 Great America Parkway, Suite 272 Santa Clara, CA 95054**
地址: **5201 Great America Parkway, Suite 272 Santa Clara, CA 95054**
**Contactor: : Andrew Hung, 联系人: Andrew Hung**
电话 Tel**: 650-326-3313**
**Email 邮箱: info@caeonline.com**

This Contract is made by and among the Buyer and the Seller , hereby the Buyer agrees to buy and the Seller agrees to sell the under-mentioned commodity and service according to the terms and conditions stipulated below:
本合同由买方、卖方制订，由买方购进，卖方售出下列货品及服务，并依据下列条款签订合同:

**1.  Subjects of Contract 合同标的:**

| 序号 | 产品名称 | 规格 | 数量 | 单价（USD） | 总价（USD） | 备注 |
|---|---|---|---|---|---|---|
| 1 | USED STEPPER | NIKON NSR-2205i12D | 1 EA | $ 2,250,000.00 | $ 2,250,000.00 | "AS-IS" AND WHERE-IS |
| 总计金额：USD 2,250,000.00 大写：美元贰佰贰拾伍万元整 | | | | | | |

**2.  Terms: Exworks** As is, where is at warehouse.

成交价格术语: Exworks 工厂交货

3.**Delivery requirements:** The seller or the third person designated by the Seller shall provide active cooperation and assistance in the process of equipment move out and loading.
交货要求: 设备搬出和装车过程中，卖方或卖方指定的第三人应给予积极配合协助。

**4. Transshipment:** not allowed; **Partial shipment:** not allowed
转运:不允许; 分批装运:不允许

DocuSign Envelope ID: A1F8EFA2-AF83-480... .0-FDDC543D0F5C

5.　**Date of Delivery:** Before 1st Sept.2022 (In case of holidays, both parties can negotiate for operation)

交货期：2022.9.1之前((如遇节假日原因可双方协商操作）

6. **the site of delivery : Germany**

交货地点：德国

7. **Terms of Payment:** Payment of the Purchase Price to the Seller is required the payment to 30% initial payment due 8/15, 70% payment final payment due 9/1.

付款方式：要求向卖方支付购买价格。付款金额为 8 月 15 日之前付 30%预付款，9 月 1 日前付 70%最终付款。

8. **Remark:** The Seller shall assist CCIC inspection of the equipment

其它：卖方需要协助设备的 CCIC 检验。

9. **Shipping Advice:** the seller shall provide Packing List & Commercial Invoice timely for declaring.

装运通知：卖方应提供清关所需的装箱单和发票。

10. .**Force Majeure:** In case of Force Majeure, which might occur in the process of manufacturing or in the course of loading or transit, the Seller shall not be held responsible for late delivery or non-delivery of the goods but shall advise the Buyer immediately of the occurrence mentioned above and within 14 days thereafter, deliver to the buyer by airmail a certificate issued by the competent government authorities or Chamber of Commerce where the accident occurs as evidence thereof. In case the accident lasts for more than 10 weeks, the Buyer shall have the right to cancel this Contract in written.

不可抗力：在制造、运输或装卸过程中由于发生不可抗力事故，使卖方不能在合同规定的期限内交货或不能交货，责任不在卖方，但卖方必须立即将事故通知买方，并在事故发生后 14 天内将事故发生地官方或商会出具的证书空邮寄交买方为证。如不可抗力事故持续十周以上，买方有权以书面形式撤销合同。



11. **Quality requirement:** The Equipment is sold to Buyer "As-Is" and "Where-Is," without recourse against the Seller. The Equipment is not subject to any warranty or guarantee, express or implied, as to the quality of the Equipment.

质量要求：设备按 "原地现状" 出售给买方，对卖方无追索权。设备的质量不受任何明示或暗示的保证或保证的约束。

12. **Liquidated damages for late delivery:** If the seller delays the delivery, with exception of Force Majored causes specified in Clause 9 of this Contract, the Seller shall pay 3% of the contract amount to the buyer as liquidated damages for each week overdue (less than one week shall be calculated as one week). If the overdue period exceeds 21 days, the Seller shall pay 15% of the contract amount to the buyer. And the buyer has the right to terminate the contract, and the Seller shall also bear the relevant losses.

逾期交货违约金：除本合同第 9 条不可抗力影响外，如卖方逾期交货的，每逾期一周（不足一周的按一周计算），卖方应按合同金额 3%向买方支付违约金。逾期超过 21 天的，卖方应向买方支付合同金额 15%的解约金。同时买方有权解除合同，由此造成的相关损失亦由卖方承担。

3

DocuSign Envelope ID: A1F8EFA2-AF83-480C-...10-FDDC543D0F5C

13. **Law application:** All disputes in connection with this Contract or the execution thereof shall be settled through friendly negotiations. In case no settlement can be reached through negotiations, the case should then be submitted for China International Economic and Trade Arbitration Commission Shanghai Branch arbitration. The arbitration fee shall be borne by the losing party.
法律适用：凡有关本合同或执行本全同而发生的一切争执，应通过友好协商解决，如不能解决，则应申请中国国际经济贸易仲裁委员会上海分会仲裁. 仲裁费用由败诉一方负担。

14. The terms in the contract are based on INCOTERMS 2000 of the International Chamber of Commerce.
本合同使用的术语系根据国际商会《INCOTERMS 2000》。

15. **Versions:** This contract is made out in both Chinese and English of which version is equally effective. Conflicts between these two languages arising therefore, if any, shall be subject to Chinese version.
文字：本合同中、英两种文字具有同等法律效力，如文字解释有异议，应以中文本为准。

16. This contract is made in two original copies, one for each party, effective since being signed /sealed by both parties.Scanning, fax and other copies are valid for both parties.
本合同正本一式两份，每方各执一份，自双方代表签字或盖章之日起生效, 扫描、传真等复印件对双方有效。

The Buyer 买方：
Shanghai Tyron Semiconductor Equipment Co.,Ltd

The Seller 卖方：
Capital Asset Exchange and Trading, LLC

DocuSigned by:

Austin Gill

2881A2C1DCFF448...

签章 (Authorized signature & Seal)
日期 (Date) 2022. 8. 12.

签章 (Authorized signature & Seal)
日期 (Date)

DocuSign Envelope ID: 18A0B9B7-79FE-4〔    0-A5ED46CB0DEA

4

# CONTRACT
# 合  同

Contract No 合同编号: **TYEP2022082201**
Location 签订地点：上海市浦东新区

**The Buyer:   Shanghai Tyron Semiconductor Equipment Co.,Ltd**
买方: 上海探跃半导体设备有限公司
**Address:No.101,1 Floor,Build E,No.210 Xuanqiu Road,Xuanqiao Town,Pudong New District,Shanghai**
地址：上海市浦东新区宣桥镇宣秋路 210 号 E 幢 1 楼北侧 101 室
**Contactor：:Hua Li    联系人: 李华**
电话 Tel：+86-021-20958760
**Email 邮箱: hli@shtyron.com**

**The Seller:   Capital Asset Exchange and Trading, LLC**
卖方: Capital Asset Exchange and Trading, LLC
**Address:  5201 Great America Parkway, Suite 272 Santa Clara, CA 95054**
地址：**5201 Great America Parkway, Suite 272 Santa Clara, CA 95054**
**Contactor：: Andrew Hung,  联系人: Andrew Hung**
电话 Tel：650-326-3313
**Email 邮箱: info@caeonline.com**

This Contract is made by and among the Buyer and the Seller , hereby the Buyer agrees to buy and the Seller agrees to sell the under-mentioned commodity and service according to the terms and conditions stipulated below:
本合同由买方、卖方制订，由买方购进， 卖方售出下列货品及服务， 并依据下列条款签订合同：

**1.  Subjects of Contract 合同标的:**

| 序号 | 产品名称 | 规格 | 数量 | 单价（USD） | 总价（USD） | 备注 |
|------|----------|------|------|-------------|-------------|------|
| 1 | USED STEPPER | NIKON NSR-2205i12D | 1 EA | $ 2,360,000.00 | $ 2,360,000.00 | "AS-IS" AND WHERE-IS |
| | | 总计金额：USD 2,360,000.00 大写：美元贰佰叁拾陆万元整 | | | | |

**2.  Terms：Exworks  As is, where is at warehouse.**

  成交价格术语：Exworks  工厂交货

**3. Delivery requirements：The seller or the third person designated by the Seller shall provide active cooperation and assistance in the process of equipment move out and loading.**

  交货要求：设备搬出和装车过程中，卖方或卖方指定的第三人应给予积极配合协助。

**4.  Transshipment：not allowed；Partial shipment：not allowed**
  转运:不允许；分批装运:不允许

1 / 3

DocuSign Envelope ID: 18A0B9B7-79FE-4    0-A5ED46CB0DEA

5.  **Date of Delivery:** Before 31st Dec. 2022（In case of holidays, both parties can negotiate for operation）

交货期：2022.12.31 之前（(如遇节假日原因可双方协商操作)

6. **the site of delivery**：Europe

交货地点：欧洲

7. **Terms of Payment:**

Non-refundable deposit of 30% of the Purchase Price is required before 25th August. Payment of 70% of the Purchase Price is required two weeks prior to release of the Equipment, expected to be 31st December 2022. If not received, CAET has the right to void this invoice.

付款方式：要求向卖方支付购买价格。付款金额为 8 月 2 5 日之前付 30%预付款，需要在设备放行前两周，预计 12 月 31 日前付 70%最终付款。

8. **Remark：** The Seller shall assist CCIC inspection of the equipment

其它：卖方需要协助设备的 CCIC 检验。

9. **Shipping Advice:** the seller shall provide Packing List & Commercial Invoice timely for declaring.

装运通知：卖方应提供清关所需的装箱单和发票。

10.  **.Force Majeure:** In case of Force Majeure, which might occur in the process of manufacturing or in the course of loading or transit, the Seller shall not be held responsible for late delivery or non-delivery of the goods but shall advise the Buyer immediately of the occurrence mentioned above and within 14 days thereafter, deliver to the buyer by airmail a certificate issued by the competent government authorities or Chamber of Commerce where the accident occurs as evidence thereof. In case the accident lasts for more than 10 weeks, the Buyer shall have the right to cancel this Contract in written.

不可抗力：在制造、运输或装卸过程中由于发生不可抗力事故，使卖方不能在合同规定的期限内交货或不能交货，责任不在卖方，但卖方必须立即将事故通知买方，并在事故发生后 14 天内将事故发生地官方或商会出具的证书空邮寄交买方为证。如不可抗力事故持续十周以上，买方有权以书面形式撤销合同。

11.  **Quality requirement:** The Equipment is sold to Buyer "As-Is" and "Where-Is," without recourse against the Seller. The Equipment is not subject to any warranty or guarantee, express or implied, as to the quality of the Equipment.

质量要求：设备按 "原地现状" 出售给买方，对卖方无追索权。设备的质量不受任何明示或暗示的保证或保证的约束。

12. Liquidated damages for late delivery:  If the seller delays the delivery, with exception of Force Majored causes specified in Clause 9 of this Contract, the Seller shall pay 3% of the contract amount to the buyer as liquidated damages for each week overdue (less than one week shall be calculated as one week). If the overdue period exceeds 24 days, the Seller shall pay 15% of the contract amount to the buyer. And the buyer has the right to terminate the contract, and the Seller shall also bear the relevant losses.

逾期交货违约金：除本合同第 9 条不可抗力影响外，如卖方逾期交货的，每逾期一周（不足一周的按一周



6

DocuSign Envelope ID: 18A0B9B7-79FE-4...    J-A5ED46CB0DEA

计算），买方应按合同金额 3%向买方支付违约金。逾期超过 21 天的，卖方应向买方支付合同金额 15%的解约金。同时买方有权解除合同，由此造成的相关损失亦由卖方承担。

13. **Law application:** All disputes in connection with this Contract or the execution thereof shall be settled through friendly negotiations. In case no settlement can be reached through negotiations, the case should then be submitted for China International Economic and Trade Arbitration Commission Shanghai Branch arbitration. The arbitration fee shall be borne by the losing party.
**法律适用：**凡有关本合同或执行本合同而发生的一切争执，应通过友好协商解决，如不能解决，则应申请中国国际经济贸易仲裁委员会上海分会仲裁。仲裁费用由败诉一方负担。

14. The terms in the contract are based on INCOTERMS 2000 of the International Chamber of Commerce.
本合同使用的术语系根据国际商会《INCOTERMS 2000》。

15. **Versions:** This contract is made out in both Chinese and English of which version is equally effective. Conflicts between these two languages arising therefore, if any, shall be subject to Chinese version.
**文字：**本合同中、英两种文字具有同等法律效力，如文字解释有异议，应以中文本为准。

16. This contract is made in two original copies, one for each party, effective since being signed /sealed by both parties.Scanning, fax and other copies are valid for both parties.
本合同正本一式两份，每方各执一份，自双方代表签字或盖章之日起生效，扫描、传真等复印件对双方有效。

The Buyer 买方：
Shanghai Tyron Semiconductor Equipment Co.,Ltd

The Seller 卖方：
Capital Asset Exchange and Trading, LLC

DocuSigned by:
*Austin Gill*
2B81A2C1DCFF446...

签章(Authorized signature & Seal)
日期（Date）

签章(Authorized signature & Seal)
日期（Date）8/22/2022

# Exhibit C-4

[Entire Exhibit Proposed to be Filed Under Seal]

From: 李华 hli@shtyron.com
Subject: Re:RE: Fw:Fw:Re:Fw:Re:回复： Internal Auditing request on Shanghai Tyron and CAE about NIKON / NSR 2205 i12D 25268 & 25239
Date: May 23, 2024 at 16:10
To: Austin Gill agill@caeonline.com
Cc: Andrew Hung ahung@caeonline.com, Bill@sffwlaw.com, Erik Stone estone@caeonline.com, JP Santos jsantos@caeonline.com, Shun Yi Huang shuang@caeonline.com, Alex Choo achoo@caeonline.com, Amber Hsu ahsu@caeonline.com, Candace Chen candace.chen@caeonline.com, lytang@shtyron.com, ywhu@shtyron.com

Hi Austin,

Thank you for the previous heads-up! They did stop bothering us, and the internal auditing is currently wrapping up. We will let you know when they make the final decision. Please provide the documentation to support the status of the target equipment when it is available.

We understand that you must have been under great pressure recently, as the restrictions have affected almost all the semi-conductor equipment trade between US and PRC. We appreciate your constant help, as always.


Best regards,

Hua Li


发件人：Austin Gill <agill@caeonline.com>
发送日期：2024-05-13 16:45:14
收件人："李华" <hli@shtyron.com>
抄送人：Andrew Hung <ahung@caeonline.com>,"Bill@sffwlaw.com"
<Bill@sffwlaw.com>,Erik Stone <estone@caeonline.com>,JP Santos
<jsantos@caeonline.com>,Shun Yi Huang <shuang@caeonline.com>,Alex Choo
<achoo@caeonline.com>,Amber Hsu <ahsu@caeonline.com>,Candace Chen
<candace.chen@caeonline.com>,"lytang@shtyron.com"
<lytang@shtyron.com>,"ywhu@shtyron.com" <ywhu@shtyron.com>
主题：RE: Fw:Fw:Re:Fw:Re:回复： Internal Auditing request on Shanghai Tyron and CAE about NIKON / NSR 2205 i12D 25268 & 25239

Sure, I'll review with our compliance team and have them provide this information. I suspect this has been communicated previously – has your consultant read through our correspondence? I'm skeptical of their knowledge as it relates to this, since their comment in the email below refers to the "equipment" not being included in the restrictions lists they purportedly read through. I'd first recommend they read through the BIS restrictions on semiconductor-related exports to China, and they will see that the "equipment" is one small part of the formula.

**From:** 李华 <hli@shtyron.com>
**Sent:** Monday, May 13, 2024 3:39 AM
**To:** Austin Gill <agill@caeonline.com>
**Cc:** Andrew Hung <ahung@caeonline.com>; Bill@sffwlaw.com; Erik Stone <estone@caeonline.com>; JP Santos <jsantos@caeonline.com>; Shun Yi Huang <shuang@caeonline.com>; Alex Choo <achoo@caeonline.com>; Amber Hsu <ahsu@caeonline.com>; Candace Chen <candace.chen@caeonline.com>; lytang@shtyron.com; ywhu@shtyron.com
**Subject:** Fw:Fw:Re:Fw:Re:回复：Internal Auditing request on Shanghai Tyron and CAE about NIKON / NSR 2205 i12D 25268 & 25239

Hi Austin,

Please see the email from our consultant and help with the remaining questions. We are not capable to answer those questions. Thank you!

Best regards,

Hua Li

-------- 转发邮件信息 --------
发件人：" 唐梁燕 " <lytang@shtyron.com>
发送日期：2024-05-13 16:24:59
收件人：hli <hli@shtyron.com>
主题：Fw:Re:Fw:Re:回复：Internal Auditing request on Shanghai Tyron and CAE about NIKON / NSR 2205 i12D 25268 & 25239

FYI

-------- Forwarding messages --------

From: "康东媛" <doreenkang@126.com>

Date: 2024-05-13 16:12:31

To: "唐梁燕" <lytang@shtyron.com>

Subject: Re:Fw:Re:回复：Internal Auditing request on Shanghai Tyron and CAE about NIKON / NSR 2205 i12D 25268 & 25239

Hi Team,

For internal auditing: The auditing group have sent me the reply on your last email. Please see below and provide the feedback as soon as possbile.

*What we need to confirm is the current status of the target equipement. If Tyron can provide any photo, spreadsheet, notes or screenshot to support the equipment is still "exist" in fiscal year 2024. The compliance status or the any law restriction are not under our consideration. If there is nothing to support we will assume this object as bad-debt and we will sure to record this as risk in the final report. Please do not send us the screenshot from 2023 again. The file we received last time is not reasonable at all.*

For internal review: Please answer following questions from my client before our meeting appointment.

1. Is CAE the only firm that have came accross with this gov restriction problem? I am not seeing you mention your other client in our communication before. As we investigated CAE is not the only US company Tyron is working with.

yes, only CAE with this problem .We received 2 equipment in 2024 from oversea.

2. Did Tyron's competitors have the same problem?

pending. We have asked, 2 other companys have the same problem.

3. I have checked BIS website and the latest Commerce Control List. Not notice a single clue that the used equipment are included in the restriction list. Have Tyron asked CAE which exact regulation they are referring to? Let me know.

Also, lets settle down on meeting date. Please let me know if there is any message from US.

Bests,

Doreen Kang

At 2024-05-07 15:06:09, "唐梁燕" <lytang@shtyron.com> wrote:

FYI

-------- 转发邮件信息 --------
发件人："李华" <hli@shtyron.com>
发送日期：2024-05-07 14:25:43
收件人：agill <agill@caeonline.com>
抄送人："唐梁燕" <lytang@shtyron.com>,ahung <ahung@caeonline.com>,Bill <Bill@sffwlaw.com>,estone <estone@caeonline.com>,jsantos <jsantos@caeonline.com>,shuang <shuang@caeonline.com>,achoo <achoo@caeonline.com>,ahsu <ahsu@caeonline.com>,"candace.chen" <candace.chen@caeonline.com>,"胡怡玮" <ywhu@shtyron.com>
主题：Re:回复：Internal Auditing request on Shanghai Tyron and CAE about NIKON / NSR 2205 i12D 25268 & 25239

Hi Austin,

Hope all is well!

We hate to bother you but is there any updates on your availability for meeting? The audit firm is pressing us so any update would help. Thank you!

Best regards,

Hua Li

发件人："李华" <hli@shtyron.com>
发送日期：2024-04-29 17:05:47
收件人：agill <agill@caeonline.com>
抄送人："唐梁燕" <lytang@shtyron.com>,ahung <ahung@caeonline.com>,Bill
<Bill@sffwlaw.com>,estone <estone@caeonline.com>,jsantos
<jsantos@caeonline.com>,shuang <shuang@caeonline.com>,achoo
<achoo@caeonline.com>,ahsu <ahsu@caeonline.com>,"candace.chen"
<candace.chen@caeonline.com>,"胡怡玮" <ywhu@shtyron.com>
主题：回复：Internal Auditing request on Shanghai Tyron and CAE about NIKON /
NSR 2205 i12D 25268 & 25239

Hi Austin,

Thank you for reply in such a short notice. We can discuss on the file details in
meeting. We will be looking forward for your email then.

Best regards,
Hua Li

---- 回复的原邮件 ----

| | |
|---|---|
| 发件人 | Austin Gill<agill@caeonline.com> |
| 日期 | 2024年04月29日 16:29 |
| 收件人 | 李华<hli@shtyron.com> |
| 抄送至 | lytang@shtyron.com、Andrew Hung<ahung@caeonline.com>、Bill@sff wlaw.com、Erik Stone<estone@caeonline.com>、JP Santos<jsantos@c |

aeonline.com>、 Shun Yi Huang<shuang@caeonline.com>、 Alex Choo<
achoo@caeonline.com>、 Amber Hsu<ahsu@caeonline.com>、 Candac
e Chen<candace.chen@caeonline.com>、 ywhu@shtyron.com

主题    RE: Internal Auditing request on Shanghai Tyron and CAE about NIKON
        / NSR 2205 i12D 25268 & 25239

Hello Hua Li,


I'll be happy to provide you with more detail.  I know we've exchanged a lot of
emails over the past several months, and I do not think the information I've
relayed to you in my emails aligns with your requests below.  The shipment is not
*pending* export approval.  The shipment was denied for export against the US
BIS restrictions, which of course BAFA closely aligns to.  Also, I'm not aware of
the communication with Candace that you reference in your email, and there was
no attachment.  I suspect that an email from Candace from October would not be
relevant to the current  compliance status and the other information I've
communicated directly to you since October (I believe we've been in direct
communication for about that long now).


I appreciate your email and I may be available for a Zoom call next week.  I'll
review the specifics of your transactions with us and the associated compliance-
related information to ensure my understanding of the full range of detail is
current and will come back to you.  Once I've reviewed again closely, I'll let you
know my availability.


Enjoy the holiday.


Best regards,

Austin


**From:** 李华 <hli@shtyron.com>
**Sent:** Monday, April 29, 2024 3:00 AM

**To:** Austin Gill <agill@caeonline.com>
**Cc:** lytang@shtyron.com; Andrew Hung <ahung@caeonline.com>;
Bill@sffwlaw.com; Erik Stone <estone@caeonline.com>; JP Santos
<jsantos@caeonline.com>; Shun Yi Huang <shuang@caeonline.com>; Alex
Choo <achoo@caeonline.com>; Amber Hsu <ahsu@caeonline.com>; Candace
Chen <candace.chen@caeonline.com>; ywhu@shtyron.com
**Subject:** Internal Auditing request on Shanghai Tyron and CAE about NIKON /
NSR 2205 i12D 25268 & 25239

Hi Austin,

Thank you for keep following up on our case. We understand that there is not much
you can do now and you have updated most infos to us already.

Our shareholders are currently very concern about this equipment trade since it has
severely effect our annual financial report number. We have received the request
from our shareholders' audit firm for few documentations to revalue this trade. Would
you mind kindly help us with this request for their internal review? These files are
only provide to the shareholders for their future business decision. We will only need
the following files which mostly have been sent to us previously but the audit firm
consider those were not compliance with the accounting principle.

What We need:

1. The recent screenshots for the equipment status on BAFA with a clear date
include. We have received this previous from Candace Chen on Oct 13, 2023 but
with no screenshot date included. Please feel free to cover the sensitive content. We
only need the files to show the target equipment status and the date of last updates.

2. Any documents or screenshots that indicate the trading are currently pending for
export compliance approval. We have acknowledged this from your previous emails.
We will only need materials like email or status screenshots even memo to confirm
on the situation.

We really appreciated your help and Candace's work in the past 2 years. What we least want is our working together for almost 2 years on this case going down for nothing. We are doing our best to convice our shareholders not to request for refund on this trade but its hard to do so without any useful update from CAE.

Also, would you mind we set up a video conference meeting through ZOOM in next week? The audit firm have consultant coming for enquiry next week on this case. We will be on PTO from May 1st through May 6th due to Labor Day. So maybe any time start from May 7th. We can compromise for you time zone, its on your call. It will only be a short meeting for no more than 30 mins and the audit firm have their translator on hold so don't worry about language. They probably only need face to face communication to get to know the current situation and if this pending trade is going to affect our future cooperation. Please let us know when you will be free for meeting.

Apologize for such a long email! Please feel free to contact me with any question you might have regarding on the requests above. Thank you for your help in advance!

Best regards,

Hua Li

**General Manager**

**Shanghai Tyron Semiconductor Equipment Co., Ltd**

 李华

hli@shtyron.com

*Unless otherwise indicated, this message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. All tool or equipment information, especially information regarding the quality, condition*

*equipment information, especially information regarding the quality, condition, merchantability, or fitness of the equipment, provided herein is provided by CAE's supplier and not CAE. CAE has not verified the accuracy and quality of the information provided herein. CAE makes no representation or warranty as to the accuracy, completeness, and quality. Any recipient of this e-mail is responsible for verifying the information provided and takes full responsibility for verifying such information. Any proposed transaction described in this email shall not constitute a legally binding offer or acceptance of an offer.*

*Unless otherwise indicated, this message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. All tool or equipment information, especially information regarding the quality, condition, merchantability, or fitness of the equipment, provided herein is provided by CAE's supplier and not CAE. CAE has not verified the accuracy and quality of the information provided herein. CAE makes no representation or warranty as to the accuracy, completeness, and quality. Any recipient of this e-mail is responsible for verifying the information provided and takes full responsibility for verifying such information. Any proposed transaction described in this email shall not constitute a legally binding offer or acceptance of an offer.*

# Exhibit D

## [Entire Exhibit Proposed to be Filed Under Seal]

Zhener Low (State Bar No. 355279)
zhener@moni.law
**Morrow Ni LLP**
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166

*Attorneys for Petitioner*
*Shanghai Tyron Semiconductor Equipment Co., Ltd.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANGHAI TYRON SEMICONDUCTOR EQUIPMENT CO., LTD., a Chinese Corporation | Case No. |
| Petitioner, | |
| v. | **[PROPOSED] ORDER GRANTING PETITIONER'S PETITION TO CONFIRM AND ENFORCE FOREIGN ARBITRAL AWARDS** |
| Capital Asset Exchange and Trading, LLC, a California Limited Liability Company, | |
| Respondent. | |

CASE NO. To be assigned                                              [PROPOSED] ORDER

Petitioner Shanghai Tyron Semiconductor Equipment Co., Ltd. ("Petitioner") having petitioned this Court ("Petition") pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards and 9 U.S.C. § 207 to confirm the Emergency Arbitrator Decision ("Award") dated October 24, 2024 rendered in a China International Economic and Trade Arbitration Commission ("CIETAC") arbitration between Petitioner and Respondent Capital Asset Exchange and Trading, LLC ("Respondent"), case no. (2024) CIETAC SH No. 018823, and this matter having been heard before me on the __ day of ____, 202_, and it appearing that there is good cause for granting said Petition, it is hereby ORDERED:

That the Award in favor of Petitioner is confirmed in all respects and that judgment be entered against Respondent.

That Respondent shall be restrained from directly or indirectly, by any means whatsoever, selling, removing, dissipating, alienating, transferring, assigning, changing ownership, encumbering, or other similarly dealing with assets of the Respondent. The total amount of such assets shall not exceed the amount of damages, i.e. $5,366,500 USD. Such assets shall be in the form of, but not limited to:

(1) Assets owned, controlled, possessed, held for the benefit of, accessible to, or belonging to Respondent, in whole or in part;

(2) Assets in the Respondent's actual or constructive possession;

(3) Assets in the actual or constructive possession of, directly or indirectly, or owned, controlled, held by, accessible to, or belonging to, another corporation, partnership, trust, or any other entity, including, but not limited to, those in an account at any bank or savings and loan institution, or held by any credit card processing agent, customer service agent, commercial mail receiving agent, or mail depository/forwarding company, credit cooperative, retirement fund

custodian, monetary market or mutual fund, savings company, trustee, broker dealer, escrow agent, title company, commodity trading company, precious metals dealer, or financial institution or depositary institution of any kind or held for the benefit of the Respondent.

Respondent shall pay RMB 30,000 to Petitioner to compensate Petitioner for the procedural cost of the Emergency Arbitrator Procedure advanced by Petitioner.

Respondent shall pay Petitioner for all the costs and fees incurred by Petitioner in relation to the arbitration, in the enforcement of the Award, and in any post-judgment enforcement proceedings.

**IT IS SO ORDERED.**

DATED: _____          _____
                                                        UNITED STATES DISTRICT JUDGE

# Exhibit E

[Entire Exhibit Proposed to be Filed

Under Seal]

JS-CAND 44 (Rev. 10/2020)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Shanghai Tyron Semiconductor Equipment Co., Ltd.

## DEFENDANTS
Capital Asset Exchange and Trading, LLC

C 24 08551 NC

**(b)** County of Residence of First Listed Plaintiff   outside US
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Morrow Ni LLP, 3333 Michelson Drive Suite 300
Irvine, CA 92612
Tel:(213) 282-8166

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **LABOR** | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 710 Fair Labor Standards Act | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 720 Labor/Management Relations | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 740 Railway Labor Act | 835 Patent—Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | 370 Other Fraud | 751 Family and Medical Leave Act | 840 Trademark | 460 Deportation |
| | 350 Motor Vehicle | 371 Truth in Lending | 790 Other Labor Litigation | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced & Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | **SOCIAL SECURITY** | 480 Consumer Credit |
| 160 Stockholders' Suits | 360 Other Personal Injury | 385 Property Damage Product Liability | **IMMIGRATION** | 861 HIA (1395ff) | 485 Telephone Consumer Protection Act |
| 190 Other Contract | 362 Personal Injury -Medical Malpractice | | 462 Naturalization Application | 862 Black Lung (923) | 490 Cable/Sat TV |
| 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 465 Other Immigration Actions | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | 440 Other Civil Rights | **HABEAS CORPUS** | | 864 SSID Title XVI | 890 Other Statutory Actions |
| **REAL PROPERTY** | 441 Voting | 463 Alien Detainee | | 865 RSI (405(g)) | 891 Agricultural Acts |
| 210 Land Condemnation | 442 Employment | 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 220 Foreclosure | 443 Housing/ Accommodations | 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | 871 IRS–Third Party 26 USC § 7609 | ☒ 896 Arbitration |
| 240 Torts to Land | 446 Amer. w/Disabilities–Other | **OTHER** | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 448 Education | 540 Mandamus & Other | | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

99

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation–Transfer | ☐ 8 Multidistrict Litigation–Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
9 U.S.C. § 2 et seq
Brief description of cause:
Petition to confirm and enforce foreign arbitral award

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, Fed. R. Civ. P.
DEMAND $
confirm and enforce foreign arbitral award
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*:
JUDGE                                 DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)
*(Place an "X" in One Box Only)*   ☐ SAN FRANCISCO/OAKLAND   ☒ SAN JOSE   ☐ EUREKA-MCKINLEYVILLE

DATE   November 26, 2024   SIGNATURE OF ATTORNEY OF RECORD   Zhener Low

   

Print          Save As...          Reset

# Exhibit F

[Entire Exhibit Proposed to be Filed
Under Seal]

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

SHANGHAI TYRON SEMICONDUCTOR EQUIPMENT
CO., LTD., a Chinese Corporation

_____
*Plaintiff(s)*

v.

Capital Asset Exchange and Trading, LLC, a California
Limited Liability Company

_____
*Defendant(s)*

)
)
)
)
)
)
)
)
)
)
)

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Capital Asset Exchange and Trading, LLC
5201 Great America Pkwy Ste 320 Santa Clara, CA, 95054-1140

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Zhener Low
Morrow Ni LLP
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166
Email: zhener@moni.law

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                          *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____                    _____

                                         *Server's signature*

                                         _____

                                         *Printed name and title*


                                         _____

                                         *Server's address*

Additional information regarding attempted service, etc:

# Exhibit G

[Entire Exhibit Proposed to be Filed
Under Seal]

Zhener Low (State Bar No. 355279)
zhener@moni.law
**Morrow Ni LLP**
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166

*Attorneys for Petitioner*
*Shanghai Tyron Semiconductor Equipment Co., Ltd.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANGHAI TYRON SEMICONDUCTOR EQUIPMENT CO., LTD., a Chinese Corporation | Case No. |
| Petitioner, | **PETITIONER'S CORPORATE DISCLOSURE STATEMENT AND CERTIFICATION OF INTERESTED ENTITIES OR PERSONS** |
| v. | |
| Capital Asset Exchange and Trading, LLC, a California Limited Liability Company, | |
| Respondent. | |

CASE NO. To be assigned                    CERTIFICATION AND NOTICE

Pursuant to Federal Rule of Civil Procedure 7.1(a)(1), the undersigned respectfully submits the following:

1.      Guangdong Zhongtu Semiconductor Development Co., Ltd. owns 80% stock of Petitioner Shanghai Tyron Semiconductor Equipment Co., Ltd. ("Petitioner").

2.      No publicly held corporation owns 10% or more of Petitioner's stock.

Pursuant to Civil L.R. 3-15, the undersigned certifies that as of this date, there is no conflict or interest (other than the named parties) to report.

DATED: November 26, 2024                    **MORROW NI LLP**

By: _____

Zhener Low
41 Madison Ave, 31st Floor,
New York, NY 10010
(646) 453-7294
zhener@moni.law

*Attorneys for Petitioner*

CASE NO. To be assigned                    1                    CERTIFICATION AND NOTICE

# Exhibit H

[Entire Exhibit Proposed to be Filed

Under Seal]

1   Zhener Low (State Bar No. 355279)
    zhener@moni.law
2   **Morrow Ni LLP**
    3333 Michelson Drive Suite 300
3   Irvine, CA 92612
    Telephone: (213) 282-8166

4   *Attorneys for Petitioner*
    *Shanghai Tyron Semiconductor Equipment Co., Ltd.*
5

6                    **IN THE UNITED STATES DISTRICT COURT**

7              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

8

9   SHANGHAI TYRON SEMICONDUCTOR          Case No.
    EQUIPMENT CO., LTD., a Chinese
10  Corporation

11                  Petitioner,            **NOTICE OF APPEARANCE OF ZHENER**
                                           **LOW FOR PETITIONER SHANGHAI**
12          v.                             **TYRON SEMICONDUCTOR EQUIPMENT**
                                           **CO., LTD.**
13  Capital Asset Exchange and Trading, LLC, a
    California Limited Liability Company,

14

15                  Respondent.

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. To be assigned                   NOTICE OF APPEARANCE OF COUNSEL

1  TO THE CLERK OF THE COURT AND TO ALL PARTIES AND COUNSEL OF RECORD:

2      PLEASE TAKE NOTICE that Zhener Low of Morrow Ni LLP hereby enters her appearance

3  in the above-captioned case as counsel of record for Petitioner Shanghai Tyron Semiconductor

4  Equipment Co., Ltd. Attorney Zhener Low is a member of the State Bar of California and is admitted

5  to practice in the Northern District of California. Petitioner hereby requests that all notices,

6  including electronic ("ECF") notices, given or required to be given, and all papers filed or served

7  or required to be served in the above-captioned matter, be provided to and served upon Counsel for

8  Petitioner at the address set forth below:

9      Zhener Low
       zhener@moni.law
10     Morrow Ni LLP
       3333 Michelson Drive Suite 300
11     Irvine, CA 92612
       Telephone: (213) 282-8166
12

13  Respectfully Submitted,

14  DATED: November 26, 2024          **MORROW NI LLP**

15

16

17

18  By: _____

19  Zhener Low
    41 Madison Ave, 31st Floor,
20  New York, NY 10010
    (646) 453-7294
21  zhener@moni.law

22

23  *Attorneys for Petitioner*

24

25

26

27

28

CASE NO. To be assigned          1          NOTICE OF APPEARANCE OF COUNSEL

# Exhibit I

[Entire Exhibit Proposed to be Filed
Under Seal]

1  Zhener Low (State Bar No. 355279)
   zhener@moni.law
   **Morrow Ni LLP**
2  3333 Michelson Drive Suite 300
   Irvine, CA 92612
3  Telephone: (213) 282-8166

4  *Attorneys for Petitioner*
   *Shanghai Tyron Semiconductor Equipment Co., Ltd.*
5

6              **IN THE UNITED STATES DISTRICT COURT**

7            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

8

9  SHANGHAI TYRON SEMICONDUCTOR              Case No.
   EQUIPMENT CO., LTD., a Chinese
10 Corporation                               **PETITIONER'S *EX PARTE* MOTION FOR**
                                             **TEMPORARY RESTRAINING ORDER;**
11            Petitioner,                     **MEMORANDUM OF POINTS AND**
                                             **AUTHORITIES**
12     v.

13 Capital Asset Exchange and Trading, LLC, a
   California Limited Liability Company,
14

15            Respondent.

16

17

18

19

20

21

22

23

24

25

26

27

28
   Case No. To be assigned                   PETITIONER'S *EX PARTE* MOTION FOR
                                             TRO

## NOTICE OF MOTION

Please take notice that, Petitioner Shanghai Tyron Semiconductor Equipment Co., Ltd. ("Tyron" or "Petitioner"), by and through its undersigned counsel, submits this *Ex Parte* Motion for Temporary Restraining Order ("Motion") to be heard as soon as possible at a date and time to be determined by the Court.

Petitioner hereby moves for an *ex parte* temporary restraining order (or temporary, *ex parte* confirmation of the arbitral award at issue in this FAA confirmation petition) ("TRO"), prohibiting Respondent Capital Asset Exchange and Trading, LLC ("CAET" or "Respondent") from dissipating or otherwise dealing with its assets, up to the amount of $5,366,500 USD, pending the hearing of the Petitioner's petition to finally confirm and enforce its arbitral award.

Pursuant to Local Rule 65-1(a), notice could not be provided to Respondent of this Motion because the purpose of this Motion is to avoid giving Respondent advance notice sufficient to evade the enforcement. Accordingly, Petitioner seeks the Court's indulgence that service of this Motion may not be effected on Respondent until a TRO is granted.

Further, while Petitioner notes that typically a motion for an order to show cause why a preliminary injunction should not issue would be filed concurrently with a motion for TRO such as the instant one, in this case Petitioner is concurrently seeking to file under seal a petition to confirm and enforce a non-domestic arbitral award awarding preliminary injunctive relief. To avoid confusion and duplicative motion practice, and because its motion to confirm is, in essence, a motion for a preliminary injunction, Petition will not file a separate preliminary injunction motion.

The Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Zhener Low ("Low TRO Decl"), the documents and files in this action, and such other matters that may be presented at or before the Court.

Case No. To be assigned                    1          PETITIONER'S *EX PARTE* MOTION FOR TRO

Respectfully Submitted,

DATED: November 26, 2024          **MORROW NI LLP**

By: _____

Zhener Low
zhener@moni.law
Morrow Ni LLP
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166

*Attorneys for Petitioner*

## MEMORANDUM OF POINTS AND AUTHORITIES

Petitioner Shanghai Tyron Semiconductor Equipment Co., Ltd. ("Tyron" or "Petitioner"), by and through its undersigned counsel, respectfully submits this memorandum of points and authorities in support of its *Ex Parte* Motion for a TRO ("Motion").

This Motion is filed under seal pursuant to Petitioner's Administrative Motion to File This Case Under Seal.

Concurrently with this Motion, Petitioner files a Petition to Confirm and Enforce Foreign Arbitral Award ("Petition") that seeks enforcement of a foreign arbitral award ("Award") that grants, in essence, a preliminary injunction. Specifically, the Award restrained Respondent Capital Asset Exchange and Trading, LLC ("CAET" or "Respondent") from directly or indirectly, by any means whatsoever, selling, removing, dissipating, alienating, transferring, assigning, changing ownership, encumbering, or other similarly dealing with assets up to $5,366,500 USD. Ex. C-1[1] (Award) to Zhener Low Declaration in Support of Administrative Motion to File Petition Under Seal ("Low Sealing Decl"), at 11-12.

A Temporary Restraining Order is a necessary first step prior to the confirmation and enforcement of the preliminary injunction Award. The granting of this initial TRO *ex parte*, followed by service upon Respondent and Respondent's financial institutions, will temporarily prevent wrongful dissipation of assets pending the resolution of the underlying Petition. This will prevent actions that may render the Award, as well as any final merits award, meaningless.

## RELEVANT HISTORY

In 2022, Petitioner and Respondent entered two Purchase Contracts, under which

---

[1] Exhibit C is Zhener Low's Declaration in support of this Petition; Exhibit C-1 is Exhibit 1 attached thereto.

Petitioner agreed to purchase from Respondent two second-hand lithography machines for a total of US$4,610,000. (Purchase Contracts). Ex. C-3 to Low Sealing Decl, at 1, 4. Petitioner also purchased related support services relating to deinstallation, bracket installation, rigging, crating and logistic for tools, for a total of US$65,000. *Id*. at 11-12. The Purchase Contracts contained identical CIETAC (China International Economic and Trade Arbitration Commission) Shanghai arbitration clauses. *Id*. at 3, 6.

Between August and November 2022, Petitioner paid in full the US$4,675,000 price for the two machines and support services. Ex. C-1 to Low Sealing Decl, at 11 and 12. However, despite numerous requests to do so, Respondent has to date entirely failed to deliver the machines and support services. *Id*. at 12. While Respondent originally occasionally responded to Petitioner's entreaties to perform, it completely stopped responding as of May 13, 2024. *Id*. at 12.

In accordance with the contract terms, Petitioner filed a CIETAC arbitration on August 30, 2024. *Id*. at 4. CIETAC duly served the initiating documents on Respondent, including at their commonly used e-mail and multiple business addresses. *Id*. at 4-6. Pursuant to CIETAC's applicable emergency arbitration procedures, which procedures were also noticed to Respondent, an emergency arbitrator was appointed on October 9, 2024, to consider Petitioner's request for interim relief. *Id*. at 4. The emergency arbitrator also invited written submissions from the parties and held a virtual hearing. *Id*. at 5-6. Only Petitioner filed written submissions and attended the hearing. *Id*. at 5-6.

On October 24, 2024, the emergency arbitrator issued preliminary injunctive relief in favor of Petitioner and provided it to all parties. The interim award provided that Respondent was restrained from dissipating assets up to $5,366,500 USD. *Id*. at 18-19. The interim Award also noted that, in 2024, Respondent was sued for breach of contract in U.S. courts in three separate cases for failure to deliver ordered and paid for equipment. *Id*. at 12.

**LEGAL STANDARDS**

The standard for granting a TRO is the same as for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.,* 240 F.3d 832, 839 n. 7 (9th Cir.2001). "On a motion for a preliminary injunction, plaintiffs must make a 'threshold showing' of four factors." *E. Bay Sanctuary Covenant v. Barr,* 964 F.3d 832, 844-845 (9th Cir. 2020). "Plaintiffs must show that (1) they are likely to succeed on the merits, (2) they are likely to 'suffer irreparable harm' without relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest." *Id.* The 9th Circuit Court applies a sliding scale test, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir.2011). Here, all four factors weigh strongly in favor of a temporary restraining order.

A TRO may be issued without notice to the adverse party or its counsel if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; *and* (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

**ARGUMENT**

**I.    Petitioner Has a High Likelihood of Success.**

"To establish a substantial likelihood of success on the merits, [a plaintiff] must show 'a fair chance of success.'" *In re Focus Media Inc.,* 387 F.3d 1077, 1086 (9th Cir. 2004) (citation and internal quotations omitted). Petitioner is likely to succeed in its Petition to confirm and enforce the preliminary injunction Award.

As Petitioner illustrated in its Petition and its accompanying memorandum of points and authorities, the Award issued by an arbitrator in an international arbitration falls under the New

Case No. To be assigned                              3

PETITIONER'S EX PARTE APPLICATION FOR TRO

York Convention and Chapter 2 of the Federal Arbitration Act (FAA). The Court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [] Convention." 9 U.S.C. § 207; see also *Castro v. Tri Marine Fish Co. LLC,* 921 F.3d 766, 773 (9th Cir. 2019). Confirmation is a summary proceeding, and the party that seeks to avoid summary confirmation of the award has the heavy burden of proving that one of the seven grounds applies. *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.,* 665 F.3d 1091, 1096 (9th Cir. 2011) ("The seven grounds for refusing to confirm an award are set out in Article V of the Convention. These defenses are construed narrowly, and the party opposing recognition or enforcement bears the burden of establishing that a defense applies.")

Courts have found that an interim arbitration order is sufficiently "final" to be confirmed and enforced under the FAA. *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.,* 264 F. Supp. 2d 926, 937 (N.D. Cal. 2003). Further, to satisfy the due process requirement under Article V(1)(b) of the Convention, successful actual notice is not required; the adverse party need only prove an attempt to provide actual notice. *Guarino v. Productos Roche S.A.,* 839 F. App'x 334, 340 (11th Cir. 2020).

Here, the 17-page award contained extensive factual discussion and reasoning, was issued by a well-qualified CIETAC arbitrator and upon due notice at multiple stages of those proceedings to Respondent, and the parties were given the opportunity to make written submissions to as well as attend a hearing before the arbitrator. Ex. C-1 to Low Sealing Decl.

The Award is clear that Respondent is restrained from dissipating its assets, and that the Award is binding upon both parties and shall take effect from the date it is made. *Id.* at 18-19. Therefore, the Award is rightly binding and final for the purposes of enforcement under the Convention. No ground for refusal of enforcement is likely to apply, making success highly likely.

Although the likelihood of success on the final substantive merits of the foreign arbitration is not directly at issue here (likelihood of success is instead keyed to the Petition to confirm at issue), for completeness, Petitioner notes that Petitioner also has a high likelihood of success on the substantive merits of the case in arbitration. Notably, in the Award, the Emergency Arbitrator held that Petitioner has established that there is a reasonable possibility of success for its two arbitration claims, (1) for Respondent to return to Petitioner all payments made under the two purchase contracts and the two purchase orders, totaling $4,675,000 USD, and (2) for Respondent to pay Petitioner liquidated damages of $691,500 USD for late delivery, totaling $5,366,500 USD (also the amount that the Award prohibits Respondent from dissipating its assets), based on the fact that Respondent failed to deliver the goods despite of repeated reminders from Petitioner and the provisions of the Purchase Contracts between Petitioner and Respondent. *Id.* at 15-16. Therefore, Petitioner is also likely to prevail in the foreign arbitral proceeding.

## II. Petitioner Would Be Irreparably Harmed If a Temporary Restraining Order is not Granted.

In the context of injunctions, insolvency or the inability to otherwise pay money damages is a classic type of irreparable harm. *California Retail Portfolio Fund GMBH & Co. KG v. Hopkins Real Est. Grp.*, 193 Cal. App. 4th 849, 857, 122 Cal. Rptr. 3d 614, 621 (2011). Here, in 2024, Respondent was sued for breach of contract in U.S. courts in three separate cases by Semiconductor Global Solutions, Epicrew USA, and Cubit Pte Ltd., for failure to deliver equipment after payment. Ex. C-1 to Low Sealing Decl at 12. In addition, Respondent is currently being sued by its supplier for breach of contract. *See Bam-Hean, LLC v. Capital Asset Exchange and Trading, LLC*, No. 24CV38776 (Or. Cir. Ct. Multnomah Cnty. filed Aug. 8, 2024) (supplier alleging that CAET failed to pay for services rendered).

As such, it is very likely that Respondent will not be able to compensate Petitioner for money damages, absent a TRO to preserve Respondent's assets pending the hearing of the

Case No. To be assigned                    5         PETITIONER'S EX PARTE APPLICATION
                                                      FOR TRO

petition. Further, here, Respondent has fallen silent and turned completely unresponsive over the course of 6 months now, raising concerns that it is still a going concern. *Id.* at 12. Notably, the Emergency Arbitrator found in the Award that it is likely that the Respondent has committed several intentional breaches of contract against different counterparties. *Id.* at 17. Considering that the business model of the Respondent is to earn spread income as a middleman, and its capital is highly liquid, the Emergency Arbitrator recognized that the Respondent has a high probability of transferring its assets, and that the failure to take emergency measures to restrain the Respondent from disposing of its property may cause irreparable damage to the Petitioner. *Id.*

III. **The Balance of Equities Strongly Favors Granting Petitioner's *Ex Parte* Motion for a TRO.**

A court must "balance the interests of all parties and weigh the damage to each" in determining the balance of the equities. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). Petitioner has demonstrated above that it has a significant interest in obtaining this TRO pending the resolution of the petition. Without the TRO in place, there is a significant risk that the Award and Petitioner's efforts to confirm and enforce the Award may be rendered nugatory, should Respondent (being in dire financial straits) take steps to dissipate and/or shield its U.S. assets from enforcement while the Petition is being considered by the court. Further, it goes without saying that should Respondent be alerted to Petitioner's enforcement efforts without an operative TRO in place, any dissipative conduct by Respondent would render Petitioner's ongoing arbitration against Respondent meaningless, as assets would not be preserved for recovery.

In contrast, damages that a TRO might cause to Respondent are minimal. Further, as the Emergency Arbitrator also found in the Award, while Respondent's operations and cash flow may be affected to a certain extent, considering that the Respondent had already received a $4,675,000 USD windfall from Petitioner for the equipment but had not actually fulfilled its obligation to deliver the equipment, interim relief measures would not affect Respondent unduly. Ex. C-1 to

PETITIONER'S EX PARTE APPLICATION FOR TRO

Low Sealing Decl, at 17-18.

In addition, any harm to Respondent is well-managed here, given that Petitioner had submitted to the arbitration a liability insurance bond issued by an insurance company to effectively guarantee that Respondent would be compensated for any losses it might suffer as a result of the interim relief measures. *Id.* It bears noting that Respondent is *already* subject to a preliminary injunction issued by the Chinese arbitrator; Petitioner's efforts here are to ensure that Respondent actually abides by it. In other words, there is no additional burden on Respondent here. In summary, damage to Petitioner in the absence of the TRO would significantly exceed the damage that might be caused to the Respondent by the TRO. *Id.* (similar analysis by the Emergency Arbitrator). Arbitrator's weighing of damages to parties applies equally to the issuance of a Temporary Restraining Order. Thus, the balance of equities strongly favors granting a TRO.

**IV.    Granting This *Ex Parte* Temporary Restraining Order Would Be In The Public Interest.**

Public interest in the effective enforcement of international arbitral awards warrants an *ex parte* TRO. The 9th Circuit has explicitly recognized that Congress enacted Chapter Two of the Federal Arbitration Act (FAA) to provide for the effective and efficient resolution of international arbitral disputes under the Convention. *Day v. Orrick, Herrington & Sutcliffe, LLP,* 42 F.4th 1131, 1133 (9th Cir. 2022). The 9th Circuit has also held that temporary equitable relief in arbitration may be essential to preserve assets or enforce performance which, if not preserved or enforced, may render a final award meaningless. *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.,* 935 F.2d 1019, 1022–23 (9th Cir. 1991) Without an operative TRO in place before the Award is confirmed and enforced, the interim Award sought to be enforced (and any final award) may well be rendered meaningless through Respondent's dissipation, which would frustrate this legislative purpose.

Case No. To be assigned                              7               PETITIONER'S EX PARTE APPLICATION
                                                                      FOR TRO

**V.    This Temporary Restraining Order Should be Granted *Ex Parte* Without Notice to Respondent.**

Federal Rule of Civil Procedure 65(b) permits this Court to enter *ex parte* orders upon a clear showing that "immediate and irreparable injury, loss, or damage will result" if notice is given to Respondents. Proper situations for *ex parte* relief include situations where notice would "render fruitless further prosecution of the action." *Nguyen v. Trojan Cap. Invs., LLC,* No. SACV 14-1983-DOC, 2015 WL 268919, at *2 (C.D. Cal. Jan. 16, 2015) (citing *Am. Can Co. v. Mansukhani,* 742 F.2d 314, 322 (7th Cir.1984)); *see also Adobe Sys., Inc. v. S. Sun Prods., Inc.,* 187 F.R.D. 636, 639 (S.D.Cal.1999). The present case falls within the category of situations where *ex parte* relief is not only appropriate but necessary to preserve the possibility of full and effective final relief.

As stated above, Petitioner has strong reasons to believe that dissipation will occur if Respondent is alerted to this proceeding before a TRO can be executed. Declaration of Zhener Low in support of Petitioner's *Ex Parte* Motion for Temporary Restraining Order ("Low TRO Decl") at ¶4. Specifically, (1) Respondent has failed to satisfy its delivery obligation under the Purchase Contracts and purchase orders after Petitioner has fully paid Respondent over a continuing 2-year period, and has since fallen silent for months in response to Petitioner's requests for delivery and attempts to communicate Ex. C-1 to Low Sealing Decl, at 11-12; (2) Respondent was given notice of the arbitration, but ignored the proceedings, suggesting it would not satisfy any order or abide by arbitral rulings, *Id.* at 4-6; and (3) Respondent is now facing multiple lawsuits with multiple customers, who are making similar allegations of payment followed by no delivery. *Id.* at 12. Respondent is also sued by its supplier for breach of contract. *See Bam-Hean, LLC v. Capital Asset Exchange and Trading, LLC*, No. 24CV38776 (Or. Cir. Ct. Multnomah Cnty. filed Aug. 8, 2024) (supplier alleging that CAET failed to pay for services rendered).

If dissipation occurs, it will cause immediate and irreparable damage to this Court's ability to provide effective final relief to Petitioner and Petitioner's attempt to enforce the interim Award

Case No. To be assigned                    8        PETITIONER'S EX PARTE APPLICATION FOR TRO

and any final award on the merits. Therefore, it is appropriate for the Court to grant an *ex parte* TRO and waive any requirement of notice to Respondent until after the TRO is granted and served on Respondent's financial institutions (and other relevant parties) and Respondent.

**VI.    No Bond Should Be Required.**

The facts of this case warrant no bond because, on October 24, 2024, Petitioner obtained and filed confirmation of liability insurance for the preservation of property in connection with its application for emergency relief. Ex. C-1 to Low Sealing Decl., at 6. This is similar to a preliminary injunction bond. As such, no additional bond is needed for this interim measure to be enforced by the Court. *See, e.g., Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 926 (N.D. Cal. 2003) (Denying a motion to vacate an arbitration interim order intended to effectuate an interim payment to a party without ordering an extra bond, where the party entitled to the interim payment already established an escrow under control of the arbitration panel for the amount of the interim payment, analogous to a preliminary injunction.)

**CONCLUSION**

For these reasons, the Court should grant Petition's *Ex Parte* Motion for Temporary Restraining Order in its entirety.

Respectfully Submitted,

DATED: November 26, 2024

**MORROW NI LLP**

By: _____

Zhener Low
zhener@moni.law
Morrow Ni LLP
3333 Michelson Drive Suite 300
Irvine, CA 92612

Case No. To be assigned          9          PETITIONER'S EX PARTE APPLICATION
FOR TRO

Telephone: (213) 282-8166

*Attorneys for Petitioner*

| Case No. To be assigned | 10 | PETITIONER'S EX PARTE APPLICATION FOR TRO |

# Exhibit J

[Entire Exhibit Proposed to be Filed

Under Seal]

Zhener Low (State Bar No. 355279)
zhener@moni.law
**Morrow Ni LLP**
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166

*Attorneys for Petitioner*
*Shanghai Tyron Semiconductor Equipment Co., Ltd.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHANGHAI TYRON SEMICONDUCTOR EQUIPMENT CO., LTD., a Chinese Corporation<br><br>          Petitioner,<br><br>   v.<br><br>Capital Asset Exchange and Trading, LLC, a California Limited Liability Company,<br><br><br>          Respondent. | Case No.<br><br>**DECLARATION OF ZHENER LOW IN SUPPORT OF PETITIONER'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER** |

Case No. To be assigned                                   Low TRO Decl

**DECLARATION OF ZHENER LOW IN SUPPORT OF PETITIONER'S EX PARTE**

**MOTION FOR TEMPORARY RESTRAINING ORDER**

I, ZHENER LOW, declare as follows:

1.      I am over the age of 18 and have personal knowledge, information and belief of the matters that I am declaring here.

2.      I am counsel for Petitioner in the above-captioned action.

3.      Exhibits and evidence relevant to this instant motion are set out in my earlier Declaration in Support of Administrative Motion to File Petition Under Seal, and I refer to them but to avoid repetition on the docket I do not exhibit them here anew.

4.      Petitioner has not attempted to provide notice of the *Ex Parte* Motion for Temporary Restraining Order to Respondent. Pursuant to the certification requirement under Federal Rule of Civil Procedure 65(b)(1)(B), I certify that such notice should not be required because, in the context, upon receiving notice, there is a risk that Respondent will dissipate and/or shield its U.S. assets from enforcement before this Court has an opportunity to decide on Petitioner's Petition to confirm and enforce the Award, rendering any further proceedings fruitless.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Executed on November 26, 2024 at San Carlos, California.



By: _____

Zhener Low

# Exhibit K

[Entire Exhibit Proposed to be Filed
Under Seal]

1    Zhener Low (State Bar No. 355279)
     zhener@moni.law
2    **Morrow Ni LLP**
     3333 Michelson Drive Suite 300
3    Irvine, CA 92612
     Telephone: (213) 282-8166

4    *Attorneys for Petitioner*
     *Shanghai Tyron Semiconductor Equipment Co., Ltd.*
5

**FILED**

**NOV 27 2024**

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

6              **IN THE UNITED STATES DISTRICT COURT**

7          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

8

9    SHANGHAI TYRON SEMICONDUCTOR          Case No.
     EQUIPMENT CO., LTD., a Chinese
10   Corporation                          **C    24 08551** NC

11              Petitioner,

12         v.                              **[PROPOSED] TEMPORARY
                                           RESTRAINING ORDER**
13   Capital Asset Exchange and Trading, LLC, a
     California Limited Liability Company,

14

15

16              Respondent.

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. To be assigned                              [PROPOSED] ORDER

THIS COURT, having read and considered Petitioner Shanghai Tyron Semiconductor Equipment Co., Ltd.'s ("Tyron" or "Petitioner") *Ex Parte* Motion for Temporary Restraining Order, the Memorandum of Points and Authorities in support of the *Ex Parte* Motion for Temporary Restraining Order, Declaration of Zhener Low in support of the *Ex Parte* Motion for Temporary Restraining Order, hereby finds:

1.    Good cause exists to hear and grant the Temporary Restraining Order *ex parte* and without notice to Respondents. In light of Respondent's failure to satisfy its delivery obligation under the Purchase Contracts and purchase orders over a 2-year period, Respondent's silence in response to Petitioner's requests for delivery and attempts to communicate, Respondent's failure to attend the arbitration while notice was given, and Respondent's involvement in multiple lawsuits for failure to deliver under other contracts, Petitioner has shown good cause that Respondent is likely to dissipate and/or shield its U.S. assets from enforcement before the temporary restraining order issues.

2.    Good cause exists to grant a temporary restraining order to temporarily enjoin Respondent from dissipating its assets, rendering the interim Award Petitioner seeking to confirm meaningless. Petitioner has shown a likelihood of succeeding on the merits of its Petition. Petitioner has sufficiently shown that they will suffer irreparable harm if a temporary restraining order is not granted, that the balance of equities strongly favors granting a temporary restraining order and that granting the Motion is in the public interest.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

3.    That Respondent and any other person or entity participating with or acting for, on behalf of, or in concert with Respondent, is temporarily enjoined and restrained from directly or indirectly, by any means whatsoever, selling, removing, dissipating, alienating, transferring,

assigning, changing ownership, encumbering, or other similarly dealing with assets of the Respondent. The total amount of such assets shall not exceed the amount of damages, i.e. $5,366,500 USD.

4.    All banks, brokerage, payment processing and other financial institutions and other persons or entities that receive actual notice of this order by any means, holding any funds or other assets in the name, for the direct or indirect benefit, or under the direct or indirect control of Respondent, or over which Respondent exercises actual or apparent authority, wherever located, shall hold and retain within their control and prohibit the withdrawal, removal, sale, payment, transfer, dissipation, assignment, pledge, alienation, encumbrance, diminution in value, or other disposal of any such funds or other assets; and that such funds and assets be frozen.

5.    That no bond shall be required for this temporary restraining order.

This temporary restraining order shall expire fourteen (14) days after entry, unless before that time the Court renders a ruling on the Petitioner, the Court extends it for a like period, or the adverse parties consent to a longer extension. All supporting pleadings and papers of this temporary restraining order shall be served upon Respondent within ___ days of this temporary restraining order.

**IT IS SO ORDERED.**

DATED:_____            _____
                                         UNITED STATES DISTRICT JUDGE
HOUR: _____