UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SHANGHAI TYRON SEMICONDUCTOR EQUIPMENT CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> CAPITAL ASSET EXCHANGE AND TRADING, LLC, <br><br> Defendant. | Case No.  5:24-cv-08551-EJD <br><br> **ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER** <br><br> Re: Dkt. No. 11 |

Before the Court is an ex parte motion for a temporary restraining order ("TRO") filed by Petitioner Shanghai Tyron Semiconductor Equipment Co., LTD ("Tyron") against Respondent Capital Asset Exchange and Trading, LLC ("CAET"). Mot., ECF No. 11. For the reasons stated below, Tyron's motion is **DENIED**.

## I. BACKGROUND

Tyron, a Chinese semiconductor company, seeks to enforce an emergency arbitral award issued in China that bars CAET, a commodity trading firm, from dissipating its assets while the two companies arbitrate a $5.4 million dispute over a breach of contract in China. Pet., ECF No. 6. In the underlying dispute, Tyron alleges that the parties entered into two contracts under which Tyron agreed to purchase from CAET two hand lithography machines totaling $4,610,000. Tyron alleges that it sent CAET the money, but CAET never delivered. Pursuant to their contracts, Tyron initiated arbitration in China and secured an emergency award on October 24, 2024, restraining CAET from dissipating $5,366,500 of its assets. This emergency injunction is in effect today.

Tyron subsequently filed a petition in this Court to enforce the foreign arbitration award on November 27, 2024. Approximately one week later, Tyron filed an ex parte motion for a TRO. The Court set a status conference for December 13, 2024, to discuss Tyron's motion. Both parties appeared at the status conference. CAET did not deny that it has not performed on a valid contract but indicated that it felt it could not send the equipment or refund the money because it may be restricted from doing so under U.S. law. After the parties entered into their contracts but prior to delivery of the equipment, CAET claims that the U.S. government imposed stricter regulations prohibiting end use of semiconductor equipment from the U.S. to China. This appeared to be new information to Tyron at the status conference, and the parties expressed interest in discussing these circumstances further. Accordingly, the Court stayed all deadlines to allow the parties to meet and confer regarding government regulatory issues, possible resolution, and a briefing schedule (if necessary). The Court scheduled another status conference for January 30, 2025, to discuss the parties' progress. The parties have informed the Court that they met and conferred and are currently engaging in settlement discussions.

## II.     LEGAL STANDARD

The purpose of a temporary restraining order is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Any temporary restraining order, therefore, is a temporary measure to protect the applicant's rights until a hearing can be held. A temporary restraining order is "not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984) (citation omitted).

Under Federal Rule of Civil Procedure 65(a), an applicant is entitled to a temporary restraining order upon demonstrating four factors: (1) the applicant "is likely to succeed on the merits"; (2) the applicant "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) the balance of equities favors the requested preliminary relief; and (4) the "injunction is in the

Case No.:   5:24-cv-08551-EJD
ORDER DEN. EX PARTE MOT. FOR TRO

2

public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

## III. DISCUSSION

The Court finds that Tyron has failed to show it will likely suffer an immediate and irreparable harm absent a TRO. *Blackburn v. Washington Dep't of Soc. & Health Servs.*, 472 F. App'x 569, 570–71 (9th Cir. 2012) (declining to examine remaining factors where petitioner failed to establish harm); *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (same); *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (same).

Tyron originally argued that CAET would immediately dissipate its assets upon learning of this action unless there was a TRO in place. Specifically, Tyron contended that, "should Respondent be alerted to Petitioner's enforcement efforts without an operative TRO in place, any dissipative conduct by Respondent would render Petitioner's ongoing arbitration against Respondent meaningless, as assets would not be preserved for recovery." Mot. 6. However, CAET is now aware of this action, it has not dissipated its assets or indicated any intention to dissipate its assets, and the parties have been engaging in productive settlement discussions regarding the regulatory issues underlying their contract dispute. *See* Joint Status Report, ECF No. 17. Therefore, the purpose of seeking the extraordinary relief of a TRO is no longer present.

Further, while it is true that the dissipation of CAET's assets would likely cause irreparable harm if Tyron receives a monetary award in the Chinese arbitration proceedings, there is no evidence that dissipation is likely. For example, Tyron raised concerns regarding CAET's silence in the six months prior to initiating this action, CAET's failure to appear in the Chinese arbitration proceedings, CAET's business model as a middleman, and CAET's participation as a defendant in numerous other breach of contract cases. However, these speculations are insufficient to show that Tyron is more likely to dissipate its assets than any other litigant facing multiple lawsuits for similar conduct. The Court also notes that Tyron took over one month to file this case after the emergency arbitration award was issued, further weakening its argument that dissipation is likely or imminent.

Therefore, Tyron's motion for a TRO is **DENIED.** Given that Tyron's underlying petition

Case No.: 5:24-cv-08551-EJD
ORDER DEN. EX PARTE MOT. FOR TRO

3

to enforce a foreign arbitration award for a preliminary injunction is, in Tyron's words, "in essence, a motion for a preliminary injunction," Mot. 1, the Court will proceed with examining Tyron's underlying petition rather than continue to examine this case under Rule 65 in a preliminary injunction hearing. The Court will discuss a schedule for briefing and a hearing on Tyron's petition at the January 30, 2025, status conference.

## IV. CONCLUSION

Based on the foregoing, the Court **DENIES** Tyron's motion for a TRO.

**IT IS SO ORDERED.**

Dated: January 29, 2025

EDWARD J. DAVILA
United States District Judge

Case No.: 5:24-cv-08551-EJD
ORDER DEN. EX PARTE MOT. FOR TRO
4