Jing He (State Bar No. 352460)
jing@moni.law
**Morrow Ni LLP**
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166

*Attorneys for Petitioner*
*Shanghai Tyron Semiconductor Equipment Co., Ltd.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Shanghai Tyron Semiconductor Equipment Co., Ltd., a Chinese Corporation<br><br>Petitioner,<br><br>v.<br><br>Capital Asset Exchange and Trading, LLC, a California Limited Liability Company,<br><br>Respondent. | Case No. 5:24-cv-08551-EJD<br><br>**PETITIONER'S NOTICE OF INTENT TO OPPOSE EX PARTE APPLICATION AND REQUEST FOR INTERIM RELIEF**<br><br>Date: April 10, 2025<br>Time: 9:00 AM<br>Place: San Jose, Courtroom 4, 5th Floor<br>Judge: Edward J. Davila |

## INTRODUCTION

Petitioner Shanghai Tyron Semiconductor Equipment Co., Ltd. ("Tyron" or "Petitioner"), by and through its undersigned counsel, respectfully submits this: (i) notice of its intent to oppose Respondent Capital Asset Exchange and Trading, LLC ("CAE")'s *ex parte* application and request for three weeks to respond (so Tyron has time to engage a sanctions law expert and further prepare a cross-motion to enter the stipulated judgment); and (ii) request for interim relief while this matter is pending.

Specifically, for the three reasons set forth below, Tyron believes that the *ex parte* motion is pretextual and that CAE is true motivation is take advantage of the political situation and administrative delay to avoid its payment obligations. Accordingly, Tyron respectfully requests that the Court order CAE not to rush to OFAC with any bad faith filing and furthermore, to immediately disclose the identities of the BIS/FBI agents it spoke to (which it has refused to do) so that Tyron can diligence whether CAE's claims have any basis in fact.

## ARGUMENT

**First, the *ex parte* application describes no legal basis for seeking OFAC's input:** CAE's application is based on two phone calls with FBI and Bureau of Industry and Security ("BIS") agents, who purportedly "advised" that it "should not refund the money it received from Tyron … without obtaining a license and/or advisory" from a *different* federal agency—the Office of Foreign Assets Control ("OFAC")—which *different* agency has *not* contacted either party. Jacob Decl. ¶ 4.

But other than claiming to have been so "advised" by these BIS/FBI agents during phone calls about entities "other than" Tyron, Defendant provides no details about what basis the BIS/FBI agents gave such advice. It is not the practice of the BIS/FBI to give legal advice, and there is no warrant, no notice of an investigation, no subpoena, no suggestion of a sealed court order, no OFAC order or notice. Indeed, OFAC regulates money transmission sanctions that do not necessarily overlap with the technology-related issues the BIS regulates. And CAE does not even claim that the

BIS/FBI agents gave *any* actual basis to believe OFAC approval was required. Indeed, nothing in CAE's submission even indicates that OFAC has jurisdiction over this admitted "refund." *Id.* In short, the ex parte application contains zero actual legal basis for CAE to believe that it in fact has to seek an OFAC license or permission to make payments.

**Second, CAE: (i) withheld critical information; (ii) refused to identify the FBI/BIS agents it spoke to; (iii) refused to even confirm it had the money that it was supposed to pay pursuant to the settlement agreement by April 15; and (iv) refused to not rush to OFAC pending this Court's review of the matter:** the *ex parte* application fails to disclose that prior to making a first payment, Tyron disclosed a list of its shareholders and even the shareholders of its one entity owner to CAE, and that CAE conducted an OFAC check before paying. As CAE admits, that first payments went through, and neither party's banks flagged it for any OFAC issues.

Tellingly, CAE has, despite repeated requests, refused to identify the FBI/BIS agents they spoke to for Tyron can independently verify what was said by these agents. Ex. A (April 7-9 e-mail chain). For all Tyron knows, CAE asked the agents' advice about whether to pay Tyron, and merely got a friendly suggestion to check with OFAC, coupled with a disclaimer that the FBI and BIS do not know what obligations CAE has to OFAC and should also check with their counsel. CAE's refusal to provide the agents' contact information speaks volumes.

In addition, CAE has even refused to confirm that it had the funds it was supposed to use for the settlement agreement's second progress payment yesterday. *Id.*

Finally, CAE has refused to confirm that it will not rush to OFAC for its opinion while this court decides this application. *Id.*

**Third, CAE misstated facts about Tyron's executives being under *technology* sanctions, which, even if true, are not equivalent to, and may be completely irrelevant to whether OFAC regulations separately prohibit making a "refund" of money that Tyron originally *paid*:** CAE describes certain purported "Due Diligence" that supposedly led it to believe Tyron may be subject

to "Export Administration Regulations" ("EARs"). *Ex parte* Application, at 4-5. For starters, even accepting these allegations, this case is no longer about *export* controls, as CAE did not settle by agreeing to export any technology, but rather to "refund" Tyron the funds it paid.

Indeed, CAE's application does not even contend that EARs are relevant to the settlement payments. *Cf. id.* at 5-6. Nor does CAE's evidence hold up under scrutiny. For example, undersigned has been informed by Tyron that the "Hua Li" it identified as being under military-related sanctions is not even the same Hua Li that works with Tyron (further reviews are ongoing).

Remarkably, although CAE has not stated that it is in fact the subject of a potential criminal investigation or any specific regulatory risk, it still makes the completely conclusory assertion that "it is apparent that refunding the payment without seeking OFAC's guidance could constitute a violation of the EARs or possibly other regulations." *Id.* at 11:8-9. This assertion, in turn, relies solely on CAE's declaration of there having been a call with the FBI/BIS, which declaration does not actually specify the source of such a risk. Jacob Decl. ¶ 4. That this is the sole attempt to link OFAC regulations with the EARs is also telling.

## **CONCLUSION**

CAE's refusal to identify the agents it spoke to, provide their contact information, refusal to confirm that it had the money it was supposed to pay, and further refusal to withhold a bad faith filing with OFAC makes its intentions clear: use politics and administrative uncertainty to avoid performance of its settlement. These facts also suggest that CAE's pointing the finger at unnamed FBI/BIS agents may be entirely pretextual.

Accordingly, Plaintiff Tyron respectfully request that the Court set a briefing schedule providing three weeks to respond to the *ex parte* application, and in the meantime order CAE to not rush to OFAC with any filing until both parties have an opportunity to be fully heard. The Court should also order CAE to disclose the identities of the BIS/FBI agents it spoke to, so Tyron and the Court can verify CAE's assertions and ascertain if there is any real basis for CAE's actions.

1     Respectfully Submitted,

2 Date: April 9, 2025                   MORROW NI LLP

By:  /s/ *Jing He*
      Xinlin Li Morrow
      Jing He
      3333 Michelson Drive Suite 300
      Irvine, CA 92612
      (213) 282-8166
      xinlin@moni.law
      jing@moni.law

      *Attorneys for Petitioner*